In re MORTON.

(District Court, D. Massachusetts. December 9, 1902.)

No. 1,559.

**1. BANKRUPTCY—TRUSTEE—DEATH—APPOINTMENT OF SUCCESSOR.**

Where all of a bankrupt's creditors who proved their claims and were unpreferred had received 100 per cent., the appointment of a new trustee by them after the death of the former trustee will not be set aside on the ground that the bankrupt had solicited their votes for the appointment.

**2. SAME—SURPLUS—PREFERRED CREDITORS.**

Where a bankrupt's estate was sufficient to pay the claims of all unpreferred creditors in full, and leave a surplus, creditors who had received an innocent preference, and, on failure to surrender the same, had been refused participation in the bankrupt's assets, were entitled, as against the bankrupt, to share in such surplus.

In Bankruptcy.

Charles H. Wardwell, for trustee.

Harry J. Jaquith, for creditors.

LOWELL, District Judge. The trustee appointed in this case died, and a meeting of the creditors was called to elect a new trustee. All the bankrupt's former creditors who had proved their claims and were unpreferred had received 100 per cent. This must be taken to have been a payment in full, as no question was made regarding allowance of interest. There were assets remaining to be administered. The bankrupt had solicited some of these creditors to vote for one Lovett as trustee, and Lovett was chosen by the statutory majority. Objection was made to the confirmation of the trustee by Warren, a creditor whose claim had been expunged because he had received an innocent preference, and by Parker, a creditor who had been paid in full. Parker no longer objects to the confirmation. The referee has found, in substance, that the bankrupt's solicitation was not by way of improper inducement; and, after conference with him, I find that he was satisfied that Lovett will make a suitable trustee. Though the solicitation of votes by the bankrupt often leads the court to refuse to confirm an election obtained by such votes, yet, in the case at bar, where no creditor whose claim had been allowed could have any real interest in the election, and where, in the absence of a choice by creditors, the referee might have appointed, I am of opinion that the appointment of Mr. Lovett should not be disturbed. As to him, the order of the referee is affirmed.

A further question concerns the petition of certain creditors of the bankrupt whose claims had been proved and filed, and had been disallowed because of innocent preferences received by them. This court has to decide which is entitled to the surplus of the bankrupt's assets after paying his unpreferred creditors in full,—the bankrupt himself, or his preferred creditors; at least, those innocently preferred. The purpose of the bankrupt act is the equal and equitable distribution of the bankrupt's property among his creditors, and the consequent

¶ 2. See Bankruptcy, vol. 6, Cent. Dig. § 498.

discharge of the bankrupt from his obligations. The discharge follows only upon the distribution, or upon a complete surrender for purposes of distribution. Where the creditor has procured an unequal distribution,—one unduly favorable to himself,—he is in some cases debarred from further distribution. This is because he has injured other creditors by obtaining a preference, not because he has injured the bankrupt himself. From the bankrupt he has obtained no more than the payment of his just debt. "It is only against assignee in bankruptcy that [preference] is possible." Low. Bankr. § 63. Especially is this true where the creditor has received that peculiar kind of preference under the act of 1898 known as "an innocent preference." In that case the preferred creditor intended no unequal distribution of his debtor's property. He learned that the distribution was unequal only after the payment was made. Under these circumstances, the act of 1898 provides that his claim shall not be allowed unless he will surrender his preference. As was stated in Pirie v. Trust Co., 182 U. S. 438, 447, 21 Sup. Ct. 906, 909, 45 L. Ed. 1171:

"His election is between keeping the preference and surrendering it. That is the favor of the law to his innocence, but, aiming to secure equality between him and other creditors, can the law indulge farther? He may have been paid something,—maybe a greater percentage than other creditors can be. That is his advantage, and he may keep it. If paid a less percentage, he can obtain as much as other creditors by surrendering the payment, and an equality of distribution of the assets of the bankrupt is assured. The effect is equitable."

From this it appears plainly that the limitations upon the right of the preferred creditor are established solely to "secure equality between him and other creditors," not to secure to the bankrupt the right to retain any part of his property while obtaining a discharge from his obligations. It is not equitable that a creditor preferred to the extent of 25 per cent. should lose the 75 per cent. due him, while the bankrupt retains a part of his unexempt estate. In Ex parte Cooper, 10 Ch. App. 510, 511, Lord Justice James said, "The doctrine of fraudulent preference is entirely for the purpose of distribution among the creditors generally, not for the benefit of any single creditor." See Willmott v. Celluloid Co., 34 Ch. Div. 147, 150. If this be true of a fraudulent preference, it cannot be held that the doctrine of innocent preference is for the benefit of the bankrupt, and for the purpose of preventing a distribution of his property among all his remaining creditors.

It may be urged that the preferred creditor has elected not to share in the distribution in bankruptcy, and that, having made his choice, he must abide by it. He must do so, indeed, as against the unpreferred creditors. He must not, by retaining his preference, speculate upon the chance that the unpreferred creditors may obtain from the estate in bankruptcy as great a percentage as he has obtained from his preference, and, if this happens, share with them in the surplus. Having elected to keep his preference, and not to compete with them, he cannot change his mind to their prejudice. There is no reason why he should not change his mind at any time so as to compete with the bankrupt. The bankrupt's property belongs to his creditors, not to himself. Again, the election of the preferred creditor to retain his

preference need not be deemed a waiver of his right to share in the bankrupt's estate, but only a waiver of his right to share therein with the unpreferred creditors.

The petitioners in this case are creditors of the bankrupt. They seek to have their claims allowed to share in his estate. Who objects to the allowance? Not any creditor, but only the bankrupt. The bankrupt, however, cannot raise the objection that the creditor, like those here, has been preferred. The objection is for the creditors, or for the trustee, their representative. A creditor who has been paid is no longer a creditor for the purpose of objecting to the claims of others. Let us suppose that an insolvent pays 10 per cent. on all his debts but one, goes into bankruptcy, and that the remaining creditor is paid out of the estate. Can any one—the bankrupt, the trustee, or the creditor who has been paid in full—object to proofs thereafter offered by the creditors originally preferred? If the claims here in question were originally offered for allowance within the year, after payment in full of all unpreferred claims, their allowance could not be successfully resisted, for there would be no one entitled to object. That a claim like this was duly offered and allowed, and afterwards expunged, cannot affect the result; otherwise the rights of preferred creditors would depend upon the time taken in winding up the estate, —a distinction without a material difference. The act does not provide that claims must be allowed within a year after adjudication, but that within a year they shall be proved. These claims have been so proved, within the letter of the law. It is a better answer to the argument, however, to treat the expunging, not as a disallowance, but, in the improbable event of the payment of unpreferred claims in full, as a mere postponement of the rights of preferred creditors. That the petitioners are justly entitled to this money is plain. Perhaps they could obtain it by proceedings in a court of equity, but I believe the equitable powers of a court of bankruptcy are large enough to give them their remedy.

No case directly in point has been cited by counsel or found by the court. A surplus, after payment in full of all unpreferred creditors, is so rare in bankruptcy that we cannot expect much authority concerning its proper disposition. No case has been found in which there was controversy between the preferred creditors and the bankrupt. The language of several decided cases, however, illustrates the principles heretofore stated. Thus, in Re Ft. Wayne Electric Corp., 39 C. C. A. 582, 99 Fed. 403, the circuit court of appeals for the Seventh circuit said the preference—

"Was received, to be sure, innocently, and without knowledge of that intent, but the payment none the less worked a preference. It gave to the appellant an undue advantage over other creditors, and while the act will not permit a recovery by the trustee of the payment, because it was received innocently, it none the less remains that the meaning of the act is that, if the appellant seek further payment out of the estate of the bankrupt, he shall share equally with other creditors with respect to his claim."

In the case at bar, all unpreferred creditors have been fully paid, and there is no question of the petitioners sharing anything with them. In Re Fixen, 42 C. C. A. 354, 102 Fed. 295, 297, 50 L. R. A. 605, the circuit court of appeals for the Ninth circuit said:

"In this view of the scope and purposes of the act, it certainly cannot be considered inequitable to require one who has received an undue portion of the estate, no matter if innocent, to surrender that advantage before participating in further distributions of the estate with those who have not received any such preference."

Here the petitioners do not seek to participate in a distribution of the estate with unpreferred creditors, but only to obtain payment of their just claims as against the bankrupt.

In the case at bar, it has been suggested that the property in question is claimed, not by the bankrupt himself, but by his trustee under a later bankruptcy. The second trustee, however, has not appeared to claim the fund, and may not be able to hold it against other preferences. At any rate, he can have no right to take property included in the first bankruptcy until the debts due under the first bankruptcy, and released by it, are paid in full.

The order of the referee is modified. Creditors who proved their claims within a year after adjudication, and whose claims were expunged by reason of their having received an innocent preference, may present their claims again for allowance, and, if no other objection to the claims is sustained, they may be allowed and paid after the payment in full of all unpreferred creditors. All questions of the rights of such preferred creditors inter sese are left to the referee for his farther consideration. What would be the rights of creditors not "innocent" need not now be discussed.