M. SUMNER HOLBROOK, trustee, *vs.* INTERNATIONAL TRUST
COMPANY.

Suffolk.      October 9, 1914. — January 18, 1915.

Present: RUGG, C. J., LORING, DE COURCY, & CROSBY, JJ.

*Bankruptcy. Fraud,* As against creditors. *Practice, Civil,* Auditor's report.

The provision of the bankruptcy act of 1898, contained in § 70 e, that "the trustee
may avoid any transfer by the bankrupt of his property which any creditor of
such bankrupt might have avoided, and may recover the property so transferred,
or its value, from the person to whom it was transferred, unless he was a *bona
fide* holder for value prior to the date of the adjudication," creates no new right
of the trustee in bankruptcy to avoid transfers of property made by the bankrupt
but merely gives him authority to enforce the rights of creditors to avoid fraudu-
lent transfers, if such have been made, and whether a particular transfer was
or was not fraudulent as to creditors depends on the laws of the State that
govern the transfer of the property in question.

In order that a transfer of property or a payment of money may be avoided as
having been made with the intent to hinder and delay creditors, it is not neces-·
sary that at the time of the transfer or payment the debtor should have been
insolvent. A transfer or payment may be made by a debtor, who although in
financial embarrassment is not insolvent, where the attendant circumstances
show an intent to delay and defraud creditors.

The rule, that a trader who does not meet his obligations as they mature in the
ordinary course of business is insolvent, does not apply to persons who are not
traders, and, on account of the reason which makes the rule applicable to traders,
a finding of an auditor, that a firm of traders "were unable to pay their debts as
they matured and became due and payable in the ordinary course of business
as persons carrying on trade usually do," is evidence for a jury that a large pay-
ment of money made by this firm when they were in this condition was made with
intent to hinder and delay their creditors.

In an action by a trustee in bankruptcy under § 70 e of the bankruptcy act of 1898
to recover the amount of certain payments of money made by a bankrupt firm
to the defendant as having been made with the intent to hinder and delay cred-
itors, an auditor found that "neither the firm in making these payments nor
the defendant company in accepting them, thought their act morally wrong,
and neither had any desire or active purpose ultimately to leave the creditors
unpaid," and thereupon the auditor added, "but I rule that voluntary pay-
ments made under the circumstances here disclosed by a firm which is insolvent,
that is to say not in a position to pay its bills as they mature, and without any
meritorious consideration of blood or affection or as a settlement to a wife, neces-
sarily delay, hinder and defraud its creditors." *Held,* that the auditor did not
find that there was no intent to hinder and delay creditors.

Where an auditor's report is in evidence before a jury the finding of a fact by the
auditor is evidence of that fact for the jury, whether the auditor was right or
wrong in making the finding.

LORING, J.  This is an action brought by a trustee in bankruptcy under § 70 e of the bankruptcy act of 1898,* to recover payments made to the defendant amounting to $1,677.70.  At the trial the report of an auditor was put in evidence.  No other evidence was introduced by either party.  The defendant asked for eighteen rulings, three of which were given by the presiding judge.  Thereupon the presiding judge directed the jury to return a verdict for the plaintiff.  No exception was taken to this ruling.  The only exception taken was to the refusal of the judge to give the rulings asked for by the defendant.

The facts found by the auditor were in substance as follows:  In June, 1903, a corporation known as the Bolles, Wilde Company borrowed of the defendant $3,935, and pledged as security therefor two warehouse receipts and the merchandise thereby represented.  It was provided in the note given by the Bolles, Wilde Company that the collateral given as security for the note should stand as security "for payment of this or any other direct or indirect liability or liabilities of ours to said trust company due or to become due."  At some date (not fixed in the evidence) before August 31 of the same year (1903) a partnership known as Graves, Brown and Company took over the assets of the Bolles, Wilde Company and assumed its liabilities.  On October 22 of the same year (1903) the partnership of Graves, Brown and Company made an assignment for the benefit of their creditors.  The assignee continued the business for about two years.  On November 22, 1905, partnership articles were signed which created a new firm of Graves, Brown and Company.  It is found by the auditor that the business was carried on continuously by the assignee and the second firm of Graves, Brown and Company; that the second firm of Graves, Brown and Company began to carry on business before the partnership articles were signed, but that the time when the new firm of Graves, Brown and Company succeeded to the business could not be ascertained on the evidence.  While the assignee of the first firm of Graves, Brown and Company was

---

* Section 70 e contains these words: "The trustee may avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was a *bona fide* holder for value prior to the date of the adjudication."

carrying on the business he paid a dividend of thirty per cent to the creditors of the first firm of Graves, Brown and Company. Before that time came, the original note of the Bolles, Wilde Company for $3,935 had been paid in order to secure a release of the goods which had been pledged as collateral security for it. When the final payment was made on that note, there were in the hands of the defendant warehouse receipts representing goods worth $2,000. At the time of this final payment the defendant trust company had in its possession customers' notes which it had discounted for and which were indorsed by the Bolles, Wilde Company and also other customers' notes which had been discounted for and were indorsed by Graves, Brown and Company. These notes were at that time all overdue, and the auditor found that "though the fact does not clearly appear it may be inferred that at this time the Bolles, Wilde Company and Graves, Brown and Company were liable to the trust company upon the notes which each had indorsed." At the time that the assignee of Graves, Brown and Company paid the dividend of thirty per cent to the creditors of that firm, the customers' notes of both kinds held by the defendant trust company amounted to $3,252.95. On the amount of these customers' notes of both kinds the assignee paid the defendant trust company a dividend of thirty per cent amounting to $975.88. The check by which the $975.88 was paid to the defendant states that it was paid "in full for all claims and demands against Graves, Brown and Company," and the defendant trust company executed an assignment to the trustee which as printed is almost unintelligible but which the auditor found covered all these customers' notes.

On September 27, 1905, shortly before the partnership articles were signed by the second firm of Graves, Brown and Company, the defendant persuaded one of the new firm to give it a note for $2,504.80. The auditor found that "the amount of this note of September 27, 1905, ($2,504.80) represented exactly the unpaid balance of the entire indebtedness owed by the old firm of Graves, Brown and Company to the defendant trust company at the time the assignment to Murphy was made ($3,480.68) after deducting the amount of the dividend paid by Murphy ($975.88)." The second firm of Graves, Brown and Company continued in business for about two years. On November 1, 1907, an involuntary peti-

tion in bankruptcy was filed against them upon which they were adjudicated bankrupt, and the plaintiff is now the trustee of their estate in bankruptcy appointed under that petition.

After the note of September 27, 1905, was given, the second firm of Graves, Brown and Company made various payments upon it, amounting to $1,677.70. These payments were made at various dates between October 10, 1906, and October 5, 1907. The auditor found that the note of September 27, 1905, was given because the defendant trust company at which the firm kept its bank account asked for a note for the difference between the debt owed to it (including the debt of the Bolles, Wilde Company) and the dividend paid on that debt by the assignee. He further found that it was not founded on a valid consideration. This matter is dealt with at length by the auditor in his report, but, as the question before us is a question whether on the auditor's report a jury could find for the plaintiff, that part of the auditor's report need not be stated here.

The auditor further found that during the years 1906 and 1907 the firm of Graves, Brown and Company "was frequently unable to meet its bills promptly and that frequently it could not pay outstanding checks at the bank but was obliged to allow such dishonored checks to be returned." He further found that "during the years 1906 and 1907 Graves, Brown and Company were unable to pay their debts as they matured and became due and payable in the ordinary course of business as persons carrying on trade usually do."

The learned counsel for the defendant has not addressed his argument to the exceptions which were taken, but has stated that these exceptions are based upon the four contentions stated in the note.*

1. The first two contentions are founded on a misapprehension of the nature of § 70 e of the bankruptcy act. This section of the

---

* 1. That a trustee in bankruptcy cannot avoid a transfer of property made by the bankrupt outside of the four months' preference period on the ground that the debtor was insolvent at the time within the Massachusetts definition of the word "insolvent," unless the debtor was also insolvent at the time within the definition of "insolvent" given by the bankruptcy act.

2. That the evidence is insufficient to show that Graves, Brown and Company were insolvent at the times of the transfers within the Massachusetts definition of the word.

3. That there was sufficient consideration for the giving of the note of

bankruptcy act does not create in the trustee in bankruptcy a new right to avoid transfers of property made by the bankrupt. All that it does is to give authority to the trustee to avoid any transfers of property made by the bankrupt "which any creditor" might have avoided. It was early decided in this Commonwealth in a series of cases of which *Holland* v. *Cruft*, 20 Pick. 321, may be taken to be the most important, that an administrator of a deceased person (who had made a conveyance fraudulent as to creditors) might as the representative of the creditors of the deceased maintain a bill to avoid the conveyance. By § 70 e of the bankruptcy act the same result was reached by statutory enactment which was reached by judicial decision in *Holland* v. *Cruft*. All that § 70 e of the bankruptcy act does is to give authority to the trustee in bankruptcy to enforce the rights of creditors to avoid fraudulent transfers of property made by the bankrupt if such fraudulent transfers have been made. That is to say, the question whether a particular transfer was or was not fraudulent as to creditors under § 70 e does not depend upon the bankruptcy act but upon the laws of the State which govern the transfer of the property in question. See in this connection *In re Mullen*, 101 Fed. Rep. 413; Collier on Bankruptcy (10th ed.) 1042 g and cases cited there and in footnote 320. It follows that the definition of "insolvency" prescribed by the bankruptcy act and the definition of "insolvency" adopted by this and other courts when that word is found in the Massachusetts insolvency and other bankrupt acts, have nothing to do with this question.

The question raised by the exception to the refusal of the presiding judge to direct a verdict for the defendant is whether on the facts stated in the auditor's report the jury were warranted in finding that the payments amounting to $1,677.70 made by the firm between October, 1906, and October, 1907, were made with intent to hinder and delay creditors of the firm. As to that question there can be no doubt. It is not necessary in order to avoid a

September 27, 1905, and that the same was a valid note, and the payments made thereon cannot be recovered in this action.

4. That there was a forbearance by the defendant to sue Graves, Brown and Company for false representations in obtaining the balance of the collateral at the time of the payment of the note of June 24, 1903, and such forbearance was good consideration for the giving of the note of September 27, 1905.

transfer as a transfer made to hinder and delay creditors that the transferor at the time of the transfer was insolvent. If the circumstances are such that the jury can find that the transfer was made with intent to hinder and delay creditors it is voidable. Where a transfer is made by a debtor who is in embarrassed circumstances although not insolvent, a jury in some cases may be warranted in finding the fact of intent to delay and defraud. *Parkman* v. *Welch,* 19 Pick. 231. *Blake* v. *Sawin,* 10 Allen, 340.

The reason on which it is held under the insolvency statutes of Massachusetts and under bankruptcy statutes generally that a trader is insolvent when he does not meet his obligations as they mature in the ordinary course of business is important in this case. It is important not because it is necessary to make out that Graves, Brown and Company were insolvent, but because the reason on which that rule is based is applicable here. That rule does not apply to all persons, but it does apply to traders. The reason upon which it is based and the reason why it applies to traders is that the failure to meet one's obligations as they mature in the ordinary course of business spells insolvency (at least within the meaning of that word in bankruptcy statutes) in the case of a trader, although it does not spell insolvency in case of all persons. See *Lee* v. *Kilburn,* 3 Gray, 594, 598–600. To the trader credit is the breath of his financial life. For that reason the fact that his obligations are not met as they mature in the ordinary course of business is more significant in case of a trader than it is in case of some other persons. In the case at bar Graves, Brown and Company must be taken on this record to have been traders. And the fact that they "were unable to pay their debts as they matured and became due and payable in the ordinary course of business as persons carrying on trade usually do" was a fact to be given its full weight by the jury in determining whether the payments made by them at that time were made with intent to hinder and delay their creditors.

The defendant has contended that the auditor found that there was in fact no intent to hinder and delay creditors. But that is not an accurate statement of his finding. The auditor first found that "neither the firm in making these payments nor the defendant company in accepting them, thought their act morally wrong, and neither had any desire or active purpose ulti-

mately to leave the creditors unpaid." Then the auditor went on in these words: "But I rule that voluntary payments made under the circumstances here disclosed by a firm which is insolvent, that is to say, not in a position to pay its bills as they mature, and without any meritorious consideration of blood or affection or as a settlement to a wife, necessarily delay, hinder and defraud its creditors." Whether the auditor was right in the ruling of law he made is not important. We refer to the finding and ruling to show that the defendant's contention is wrong that the auditor found that there was no intent to hinder and delay creditors. The finding of the auditor is that there was no intent "ultimately to leave the creditors unpaid," and that is the extent of his finding, for he immediately afterwards ruled that the payments were made with intent to hinder and delay.

2. The other two propositions on which the defendant says that its exceptions are based may be dismissed in a word. The auditor found as a fact that there was no valid consideration for the note of September 27, 1905. Whether the auditor was right or wrong in making this finding is of no consequence. The finding was evidence of the fact and the jury were warranted in adopting that finding.

*Exceptions overruled.*

*J. R. Lazenby,* for the defendant.
*W. H. Powers,* (*M. S. Holbrook* with him,) for the plaintiff.