ZADOCK T. RIGGS, Trustee in Bankruptcy of Estate of TOM PRICE, Appellant, v. IVA PRICE, Appellant.

In Banc, March 15, 1919.

1. **JURISDICTION: Bankruptcy Court.** An adjudication by a bankruptcy court is as immune from collateral attack as any other judgment. The conclusiveness of the decree is emphasized if the proceeding was voluntary; if, for instance, the court's jurisdiction was invoked by a bankrupt farmer, to whom the coercive provisions of the Bankrupt Act do not apply.

2. ———: **Bankruptcy: Fraudulent Conveyance: Suit Within Four Months.** The limitation of four months within which a trustee

in bankruptcy may sue to set aside transfers has reference to preferences and to proceedings in which transfers are declared to be void if made within the time limited, and not to the right of action by the trustee to set aside a fraudulent conveyance.

3. ———: Fraudulent Conveyance: Suit By Trustee in Bankruptcy: Timely Brought. The State court has jurisdiction of a suit to set aside deeds made in fraud, of creditors, more than four months before the suit, brought by the trustee in bankruptcy, upon an order of the bankruptcy court.

4. FRAUDULENT CONVEYANCE: Suit By Trustee in Bankruptcy: Prior Judgement and Execution by Creditor. In a suit in a State court by a trustee in bankruptcy to set aside a deed made by a bankrupt in fraud of his creditors, it is not necessary to allege or prove that some creditor has reduced his claim to judgment and caused execution to be issued thereon which has been returned unsatisfied. After an adjudication in bankruptcy no creditor can reduce his claim to judgment in the ordinary way, nor can the trustee do so for him; but the allowance of claims against a bankrupt's estate partakes of the nature of a judgment for debt, and after such allowances a trustee may, as the creditor's *alter ego*, file a suit to avoid the fraudulent transfer.

5. ———: ———: Pleading: Application of Fund. In a suit to set aside a conveyance made in fraud of creditors brought by a trustee in bankruptcy, it is not necessary that the petition state the amount or nature of any claim to which the property if recovered is to be applied. If a decree setting aside the conveyance is rendered, the property recovered becomes a part of the general assets of the bankrupt estate, to be distributed in a pro-rata payment of all claims of like character.

6. ———: ———: Evidence: Secured Claims. Where a material allegation is that the assets in possession of the trustee are insufficient to satisfy the claims against an estate, testimony to show the amount of secured claims is admissible.

7. ———: ———: ———: Allowed Claims. Testimony as to claims allowed by a bankruptcy court is admissible, since such allowances partake of the nature of judgments.

8. ———: Husband as Witness for Wife: Curtesy Initiate. If the husband is not a party to a suit brought by a trustee in bankruptcy to set aside a deed made by the husband to his wife as being in fraud of his creditors, he is not a competent witness for her, because he has no material interest in the judgment to be rendered. The Married Woman's Act of 1889 destroyed his curtesy initiate, and he has no such interest in the land as qualifies him to testify in his wife's behalf. [Overruling contrary announcement in Roberts v. Bartlett, 190 Mo. 1. c. 702.]

9. ————: Judgment: Responsive to Pleadings: Subsequent Mortgage. Where the petition alleges that the conveyance by a husband to his wife was fraudulent, that the property was incumbered with a mortgage made before the transfer and is a homestead, and prays that the conveyance be set aside and the property sold subject to said mortgage and that the proceeds, after paying the wife $1500, be paid to the trustee in bankruptcy, and the answer avers the existence of the incumbrance and homestead but is otherwise a general denial, a judgment subject to a mortgage placed upon the land by the wife after its transfer to her is not responsive to the pleadings, but should be limited to setting aside the fraudulent conveyance subject to pre-existing liens.

Appeal from DeKalb Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED AND REMANDED (*with directions*).

*Hewitt & Hewitt* for appellant.

(1) The transfer of the homestead in question was not made within four months prior to the filing of the petition in bankruptcy. The trustee was never vested with the title of the bankrupt to said property. The bankruptcy court did not have any jurisdiction to try and determine this cause, and the State court acquired none. Coleman v. Hagey, 252 Mo. 102; Coleman v. Dana, 191 Mo. App. 370; Mayhugh v. Todison, 246 Mo. 288; Blake v. Meadows, 225 Mo. 46. (2) There was no such creditor as contemplated in law, in existence, if bankruptcy had not intervened, who could have complained, or sustained a creditors' bill to set aside the deed in question. Secs. 70a and 70e, Bankruptcy Act; Crim v. Walker, 79 Mo. 335; Ready v. Smith, 170 Mo. 163; Davidson v. Dockery, 179 Mo. 687; Mayhugh v. Todison, 246 Mo. 288; Blake v. Meadows, 225 Mo. 26; Stam v. Smith, 183 Mo. 464; Scott v. Neely, 140 U. S. 106; Atlas Nat. Bank v. Moran P. Co., 138 Mo. 59; Mellier v. Bartlett, 106 Mo. 381. There can be no creditor unless he has a valid claim or debt against a debtor—a claim incapable of being rightfully overthrown, 8 Words and Phrases, p. 7269. (3) The admission of testimony by the court at the trial offered by the

plaintiff as to the value of the homstead was error; it is not within the province of a court of equity to try and determine the value of a homestead. Courts of equity are bound by the homestead laws. R. S. 1909, secs. 6705-6706; Reed v. Nicholson, 189 Mo. 396. (4) The court erred in admitting in evidence the debts secured by the various chattel mortgages amounting to more than $26,500, also the Stafford and Allen Trust Deeds amounting to more than $15,000. These being all secured claims were without the law, and without the allegations of plaintiff's bill. There could be no intent to delay or defraud a secured creditor. Coleman v. Hagey, 252 Mo. 132; Woodman on Trustees in Bankruptcy, sec. 358; Fraudulent Conv., 20 Cyc. 455. (5) It was error on the part of the court, in allowing the testimony of the various persons claiming debts against the husband of the defendant, to testify as to such indebtedness, this not being a suit to try and determine the validity of claims against the alleged fraudulent grantor. And this error was magnified later, by the court's refusal to permit Tom Price, the alleged debtor and grantor, to testify in the matter. And who would have denied the validity of many of them, and denied that many others were in existence at the time of the conveyance in question. Crim v. Walker, 79 Mo. 335; Davidson v. Dockery, 179 Mo. 163; Commercial Bank v. Ankrum, 191 Mo. App. 251; Coleman v. Hagey, 252 Mo. 125. (6) To allow alleged creditors to go upon the stand and testify to the bankrupt's indebtedness to them in the loose manner in which they did, and refuse to permit him to testify was error. And to charge one with being insolvent and a defrauder and refuse him permission to deny it on the witness stand and also deny the indebtedness, is yet a more grievous error. He had such a resulting interest in the homestead as the husband of the defendant—courtesy initiate—as to entitle him to be heard. It is also against equity and justice. There was absent any conspiracy to defraud. Roberts v. Bartlett, 190 Mo. 704; Steffen v. Bauer, 70 Mo. 39.

(7)   There can be no fraudulent conveyance of property as to a creditor where he has no right to subject the property to his debts. Stam v. Smith, 183 Mo. 464; Reed .v. Nicholson, 189 Mo. 404; Mellier v. Bartlett, 106 Mo. 381.   (8)   The conveyance of the homestead did not make the debtor insolvent; it constituted no part of his assets that could be reached by his creditors. (9)   A voluntary conveyance is not fraudulent *per se* as to existing creditors; the circumstances of each case must be considered.   Lane v. Kingsbury, 11 Mo. 402; Walsh v. Ketchum, 84 Mo. 427; Welch v. Mann, 193 Mo. 325.   (10)   The fact of solvency is always presumed until insolvency is established; and he who asserts the fact of insolvency has the burden of proving it.   7 Ency. Evidence, p. 482.   (11) The relationship of the parties and the insolvency of the grantor are not alone sufficient to establish fraud.   Robinson v. Dryden, 118 Mo. 534.   (12)   To make a voluntary conveyance fraudulent as to subsequent creditors there must be proof of actual or intentional fraud.   Payne v. Stanton, 59 Mo. 158; Krenger v. Vehor, 164 Mo. 163   (13) If a debtor in conveying his property does not make himself insolvent, it is immaterial whether he conveys for a valuable consideration or gives it away.   It cannot be set aside for debts prior to its execution.   Felig v. Bush, 165 Mo. 144; Reed v. Bott, 100 Mo. 62; Burnham v. Boyd, 167 Mo. 189.

*Edward G. Robison* and *Kendall B. Randolph* for respondent.

(1) Where a voluntary conveyance is made by one in such pecuniary circumstances that the conveyance itself renders him insolvent the conveyance is presumptively fraudulent, and it is immaterial that no actual fraud is shown or was intended.   Where a debtor, who makes a voluntary conveyance is afterwards unable to pay his existing debts at the time of the conveyance, in ordinary course the conveyance will be held void as to

277 Mo.—22

such existing debts, and the burden of proof is ˈon the donee to repel the presumption of a fraudulent intent. A voluntary conveyance by a debtor ˈto his wife is as against prior creditors presumptively fraudulent and coverture is no defense in a court of equity for fraud. The solvency essential to protect a voluntary gift consists not only in the present ability of the debtor to pay his debts, but in such a condition of his means that payment can be enforced by process of law. Scharff v. McGaugh, 205 Mo. 364; Snyder v. Free, 114 Mo. 369. It is immaterial that no actual fraud is shown or was intended. White v. McPheeters, 75 Mo. 386; Bohannon v. Combs, 79 Mo. 305. Where a debtor who makes a voluntary conveyance is afterwards unable to pay his existing debts at the time of the conveyance, in ordinary course, the conveyance will be held void as to such existing debts. Headley Grocer Co. v. Walker, 69 Mo. App. 553; Lionberger v. Baker, 114 Mo. App. 353, affirmed 88 Mo. 447; St. George's Church Society v. Branch, 120 Mo. 226. The burden of proof is on the donee to repel the presumption of a fraudulent intent. Walsh v. Ketchum, 84 Mo. 427. A voluntary conveyance by a debtor to his wife, is as against prior creditors, presumptively fraudulent. Hoffman v. Nolte, 127 Mo. 120; Garrett v. Wagner, 125 Mo. 450. The creditors may maintain a suit to set aside a voluntary conveyance to the wife, though he has a lien on other property of the husband. Patton v. Bragg, 113 Mo. 595. To make a voluntary deed void as to existing creditors, it is not necessary that the assignor should have been insolvent at the time of its execution. Potter v. McDowell, 31 Mo. 62; Updegraff v. Theaker, 57 Mo. App. 45. The solvency essential to protect a voluntary gift consists not only in the present ability of the debtor to pay his debts, but in such a condition of his means that payment can be enforced by process of law. State ex rel. v. Koontz, 83 Mo. 332; Hoffman v. Nolte, 127 Mo. 135; Lionberger v. Baker, 88 Mo. 447. (2) Sec. 6704, R. S. 1909, gives a homestead in the country not exceeding one

hundred sixty acres of land and not to exceed the total value of $1500. Where there is a mortgage on the homestead the value of $1500 is taken out of the excess over the mortgage. Reed Bros. v. Nicholson, 189 Mo. 396; Adams v. Adams, 183 Mo. 396; Hauf v. Brown, 171 Mo. 207. The owner of a homestead may sell his homestead or may give it away and the creditors have no concern to the amount of $1500 which is exempt. Grimes v. Portman, 99 Mo. 229. The fraudulent grantor, however, can convey only his homestead right and can convey no more, and the fraudulent grantee can acquire only the right to the $1500 exemption.

WALKER, J.—This appeal seeks a review of a judgment rendered in the Circuit Court of DeKalb County, in a suit brought by plaintiff, as trustee in bankruptcy of the estate of Thomas Price, to set aside as fraudulent deeds to certain land in said county, transferring the title to same to the defendant, the wife of Thomas Price. The trial court adjudged the deeds fraudulent and decreed that the title to the land was in the trustee, subject to a homestead interest of $1500, a mortgage for $5500 of prior date to said deeds, and a mortgage for $1000 made by the defendant subsequent to the transfer of the land to her. Neither party being content with the findings of the trial court, both appealed; the defendant from the entire judgment, and the plaintiff from the finding as to the $1000 encumbrance. A single review will suffice to determine all of the matters at issue.

After the formal allegations, proper in a proceeding of this character, concerning which there is no controversy, the petition avers in substance the ownership by Thomas Price on October 8, 1913, of the land, describing it; that the same was encumbered by a mortgage theretofore given by him to secure a debt of $5500; that at the time of the making of the deeds, Thomas Price was indebted to various persons, firms and corporations in the sum of $44,647, and was insolvent, and had no property with which to pay his

Pleadings.

debts; that while so insolvent, he and his wife, Ivie Price, with the intent to hinder, delay and defraud his creditors then existing, made a general warranty deed whereby, for a fictitious purported consideration of $7500, they conveyed the land to one John Price, a brother; that the deed thereto was without consideration and was made and executed for the purpose of transferring the title of said land to grantor's wife, Ivie Price; that on the day immediately after the execution of the deed to John Price, the latter quit-claimed and released the land to Ivie Price for a purported consideration of $10; that no consideration in fact passed; that John Price was a mere conduit for the purpose of transferring the title to the land from Thomas Price to his wife, Ivie Price; that each of said conveyances was made while Thomas Price was insolvent, for the purpose of defrauding his creditors, and that his insolvency and the purpose of said transfers were known at the time to each of said grantees; that Thomas Price has no property out of which his creditors can satisfy their debts, and has not had since October 8, 1913; that the trustee has no adequate remedy at law to subject said land to the payment of the debts of Thomas Price, nor for obtaining assets with which the claims of his creditors may be satisfied; that the land cannot be subjected to the payment of Thomas Price's debts, and become available to the trustee in bankruptcy for that purpose, unless the conveyances aforesaid be annulled and set aside, and the land declared to be the property of Thomas Price, bankrupt; that at the time of said conveyances, the land was occupied by Thomas Price as a homestead and he resided thereon; that the value of same at the time, and at all times since has been, $12,500; that Thomas Price was entitled to a homestead therein of the value of $1500; that the value of the land, exclusive of the mortgage for $5500 and the homestead interest in same, is $5000, which sum should be devoted to the payment of the claims of his creditors; that of the indebtedness of Thomas Price existing

at the time of said transfers, there has been adjudicated claims in bankruptcy in the United States District Court against his estate in the sum of $14,622.97; that additional claims have since been presented for allowance; that the entire assets of said estate, exclusive of the land, amount to no more than $166.

The prayer asks that the deeds to said land be canceled, and for naught held, and that Ivie Price take nothing thereby, except the value of the homestead, and that said property be ordered sold subject to the mortgage for $5500, and that the proceeds, after paying Ivie Price $1500 be paid to plaintiff, as trustee in bankruptcy for the benefit of the creditors of Thomas Price, and for such other orders, judgment and decree as are proper in the premises.

The answer admits the marriage relation; the ownership of the land; that it is the homestead of Thomas Price; that deeds were executed as stated, and the existence of the encumbrance. All other allegations are denied generally. After a hearing, the court took the case under advisement, and in October, 1915, rendered a judgment therein for plaintiff.

After formal findings as to the bankruptcy of Thomas Price, the trusteeship of plaintiff, and his **Judgment.** authority as such herein, the court finds that the defendant is the wife of Thomas Price; his ownership of the land, describing it, and the conveyances of same, and his insolvency at the time; that the transfer to John Price and his deed to Ivie Price were made without consideration and for the purpose of placing the title to said land in the defendant, Ivie Price, and were voluntary and void as to the creditors of Thomas Price, and as to his bankrupt estate, and as to the plaintiff, as trustee of same; that Thomas Price and his wife, Ivie Price, the defendant, occupied said land as a home, and that said Ivie Price is entitled to retain a homestead therein of the value of $1500; that the deeds made by Thomas Price to John Price and by John Price to Ivie Price be canceled and for naught

held, except as to the homestead; and that the title to said real estate be vested in plaintiff as trustee in bankruptcy of the estate of Thomas Price, subject to the encumbrance of $5500, and one for $1000, and the homestead right of said Ivie Price.

It was developed by the testimony, but does not otherwise appear in the record, that the $1000 mortgage on the land was placed thereon by the defendant after the fraudulent conveyance of same to her.

The facts disclose that Thomas Price was adjudged a bankrupt on his voluntary petition in the United **The Facts.** States District Court for the Western District of Missouri, March 19, 1914; that his indebtedness at the time the deeds to said land were made, and at the time of his adjudication as a bankrupt, was even greater than alleged in the petition; that his assets at said times were insufficient to satisfy same. In other respects, the facts are in substantial accord with the averments of the petition. The main issue at the trial was whether on the 8th day of October, 1913, the financial condition of Thomas Price was such as to endanger the claims of his creditors by the transfer of the title of said land to his wife, the defendant. Incidental to this issue are other matters of fact, a presentation and discussion of the legal force and effect of which will, where necessary to the determination of this case, be made in the opinion.

The defendant's assignments of error are as follows:

The absence of jurisdiction; the insufficiency of the petition; the improper admission on the part of the plaintiff, and exclusion on the part of defendant, of testimony; and the refusal to permit Thomas Price to testify on the part of his wife, the defendant. Other assignments, formal in their nature, are incidental to and dependent for their determination upon the conclusions which may be reached in regard to the foregoing. The plaintiff's assignment of error is that the judgment is not responsive to the pleadings.

I.  The defendant contends that the making of the deeds in controversy more than four months prior to the filing of the petition herein divested the bankruptcy court of power to direct the trustee to prosecute this action, and that the State court consequently acquired none.

*Jurisdiction.*

First, as to the validity of the act of the bankruptcy court: Upon an adjudication of bankruptcy, the decree becomes as immune from collateral attack as any other judgment.    [Chapman v. Brewer, 114 U. S. 1. c. 169; Lamp Chimney Co. v. Brass & Copper Co., 91 U. S. 1. c. 661; Michaels v. Post, 88 U. S. 398; Marvin v. Anderson, 111 Wis. 387; Golden & Co. v. Loving, 42 App. D. C. 489; 5 Cyc. 237n; Collier's Bankruptcy (11 Ed.), pp. 12, 121.]  If possible, the conclusiveness of the decree is emphasized where, as here, the proceeding was voluntary. Not being subject, as a farmer, to the coercive provisions of the act, the bankrupt invoked the jurisdiction of the court (Sec. 4a), which is required to make an adjudication, or dismiss the proceeding, upon the filing therein of a petition (Sec. 18g), accompanied as it was with a verified schedule of the bankrupt's property and the names of his creditors, and the statement that he owes debts he is unable to pay, and is willing to surrender all of his property for the benefit of his creditors (Sec. 7, Subd. 8).  Under this state of facts, the act of bankruptcy is held to have been committed upon the filing of the petition. [Hanover Natl. Bk. v. Moyses, 186 U. S. 1. c. 190.]  The finality of the decree, therefore, obviates any objection of the general jurisdiction of the bankruptcy court, and as a consequence, its authority to direct the trustee to institute the action at bar.

In addition, it is clearly indicated by the language of the statute that the limitation of four months within which a trustee may sue to set aside transfers has reference to    preferences   under Section   60a, and to proceedings under Section 67e,  of the act, in which

transfers are declared to be void if made within the
time limited (Bush v. Export Sto. Co., 136 Fed. 918;
Collier on Bankruptcy, 11th Ed. p. 1062 and cases), and
not to the right of action of the trustee under Section
70e to set aside a fraudulent conveyance. [Underleak
v. Scott, 117 Minn. l. c. 140.]

The provisions of the act in regard to the character
of the trustee's title to the property of the bankrupt
estate, and the powers conferred on him in the care and
management of same, are futher illustrative of the
unsoundness of defendant's contention in regard to the
application of the bankruptcy statute of limitations
to this case.

Section 47a, Subd. 2, of the Bankruptcy Act, as
amended July 25, 1910, provides: "That as to all pro-
perty not in the custody of the bankruptcy court, he
(the trustee) shall be deemed vested with all rights and
powers of a judgment creditor holding a judgment ex-
ecution duly returned unsatisfied." This provision
must be construed together with those portions of
Section 70a and Section 70e (In re Hammond, 188
Fed. 1020), of the act, as amended July 25, 1910, which
further emphasizes the vesting of the title of the bank-
rupt's property in the trustee, and expressly includes
property transferred by him in fraud of his creditors,
and authorizes the trustee to institute actions to avoid
any of such transfers which any creditor might have
avoided by a suit in a bankruptcy court, or in a state
court, which would have jurisdiction if bankruptcy had
not intervened. [Parker v. Sherman, 195 Fed. 648, 28
Am. B. R. 379.] The trustee is thus subrogated to the
rights of the creditors, and the limitation as to his right
of action is that prescribed by the State law as to pro-
ceedings to set aside fraudulent conveyances, and not to
the four months of the bankruptcy act. [Baldwin v.
Kingston (U. S. Dist. Ct. N. J.), 40 Am. B. R. 641; Man-
ders v. Wilson, 230 Fed. 536; Holbrook v. Inter. Tr.

Co. (Mass. Sup. Ct.), 107 N. E. 665; Bick v. Nimmo,
88 Atl. (Md.) 116; Hobbs v. Frazier, 55 So. 848; New-
comb v. Birver, 199 Fed. 529; Hall v. Glenn, 39 Am.
B. R. (U. S. Dist. Ct. Cal.) 54; McKenna v. Simpson,
129 U. S. 506.]

II.   It is not necessary to the maintenance of an
action under Sections 47a and 70e for the trustee to
aver or show that some creditor has reduced his claim
**Powers of** to a judgment and issued execution thereon
**Trustee**
**and Rights** which has been returned unsatisfied, as in a
**of Creditors.** like proceeding in equity. [Bean v. Parker
(Vt. Sup. Ct. ), 38 Am. B. R. 1. c. 903.] The reason
therefor being that after an adjudication, no creditor
can reduce his claim to a judgment in the ordinary way,
nor can the trustee do so in his behalf. This renders the
relation of those whose claims have been allowed against
the estate that of judgment creditors, and affords a rea-
son for the uniform ruling of the courts in that behalf,
that a judgment returned unsatisfied as in an ordinary
proceeding in equity, is not a prerequisite to the right of
action of the trustee, but that in the exercise of this right
he may, as a sort of *alter ego* of all of the creditors
(Blake v. Meadows, 225 Mo. 1. c. 26), file a bill to avoid
any transfer by the bankrupt of his property, which any
creditor might have avoided had bankruptcy not in-
tervened. [Coleman v. Hagey, 252 Mo. 1. c. 128; Hood v.
Blair St. Bk., 91 N. W. (Neb.) 1. c. 705; Southard v.
Benner, 72 N. Y. 424; Beasley v. Coggins, 48 Fla. 215,
12 Am. B. R. 355; Mueller v. Bruss, 112 Wis. 406, 18
Am. B. R. 442.]

Mueller v. Bruss, supra, is but one of a type of
many cases we have cited holding that jurisdiction may
be exercised by the court of a state, under Section 70e,
to set aside a conveyance of real estate, made by the
bankrupt six months prior to the filing of the petition
in bankruptcy; and that a judgment and return of an

execution are not a necessary prerequisite to such a suit, since, under the bankruptcy act, neither the trustee nor the creditors whom he represents could obtain such a judgment. The requirement as to a judgment, and the return and issue *nulla bona* of an execution required in equity before proceeding to have a fraudulent transfer set aside is to show that all other remedies have been exhausted.

A New York court in discussing this question, in a ruling in harmony with the cases above cited, says: "To hold that a trustee cannot attack a fraudulent conveyance made by the bankrupt more than four months before the filing of the petition, without showing that some creditor had obtained a judgment and issued an execution thereon, so that he could maintain a similar action, would be simply to provide an easy and convenient method for a dishonest debtor to dispose of his property." [Thomas v. Roddy, 122 N. Y. App. Div. l. c. 856.] There is nothing in the rulings in Coleman v. Hagey, supra, which militates against this conclusion. What was said in that case in regard to the rights of creditors was *arguendo,* in reference to such rights in proceedings not in bankruptcy. In that case we held the petition insufficient only on account of the omission therefrom of allegations that the trustee had no adequate remedy at law, or an equivalent allegation, showing the presence of jurisdiction peculiar to a court of equity. The petition in the case at bar not only does not lack any of the averments held essential in the Coleman-Hagey case, but in other respects meets the requirements of a bill in equity. [O'Farrell v. Poston (S. C.), 37 Am. B. R. 470.]

In Davis v. Gates (U. S. Dist. Ct. Pa.), 37 Am. B. R. 818, the sufficiency of such a petition as is here under review was exhaustively considered. There the pleading was held good, except as to a failure to allege that the defendant, to whom the property had been transferred, had knowledge of and participated in same.

The trustee was permitted to amend on the testimony showing such fact, and a decree entered in accordance with the prayer of his petition. All of the questions as to good faith and the existence of creditors at the time of the fraudulent act are fully discussed in this case. The rulings therein define the requisites prescribed for a bill of this character, and the petition at bar is in conformity therewith.

A petition even more general in its terms was held good by the United States District Court for the Southern District of Georgia, in Johnston v. Forsyth Merc. Co., 11 Am. Bk. Rep. 669. The court said that while the charges in the bill might have been more elaborately stated, they are set forth with sufficient particularity to enable the defendant to traverse and meet them (p. 673). In that case, a demurrer was interposed, but it was not accompanied by a denial of fraud. The demurrer might have been denied on that ground. In the instant case, there was no demurrer, but simply a general denial.

The Supreme Court of Alabama, in Cartwright v. West, 185 Ala. 41, 64 So. 293, in ruling upon a petition brought by a trustee in bankruptcy, as in the case at bar, says generally that: "If the property was obtained by the defendant in fraud of the bankrupt act plaintiff was entitled to recover the same, and this is the only question involved." And, further as to the proof required and the effect of the decree, that court says: "In order that we may not be misunderstood, we hold: First. That when a bill is filed by a trustee to set aside a voluntary conveyance made by the bankrupt, he need only show one existing creditor who could have avoided the conveyance, and the State court will set aside the conveyance in favor of all existing creditors who file and prove their claims in the bankrupt court, and which last fact is to be determined and the fund distributed by said court. Second. When the trustee files a bill to set aside a conveyance as fraudulent and void as to subsequent

as well as existing creditors the averment of bankruptcy is sufficient to charge the existence of creditors, and that their demands are due, and, if relief is granted, the conveyance will be set aside as to all creditors of the bankrupt, and the property will become assets of the estate, and subject to the claims of all creditors who have properly filed and proven their claims, and which last fact is to be determined by the bankrupt court."

III. It is further contended that the petition identifies no creditor entitled to the remedy. We take this **Naming** to mean that a designation of the creditors by **Creditors.** their names is an essential allegation. The terms of the act defining the relation sustained by the trustee to the estate and as a consequence to the creditors are sufficiently definite and ample to furnish an answer to this contention.

Section 70 of the act, so far as same is pertinent hereto, provides that the trustee, upon appointment and qualification, shall be vested with the title to the bankrupt's property as of the date of the adjudication, excluding that which is exempt and including that transferred by him in fraud of creditors. By subdivision e. of the same section, it is provided that "the trustee my avoid any transfer by the bankrupt of his property which any creditor of such bankrupt might have avoided, and may recover the property so transferred, or its value, from the person to whom it was transferred, unless he was bona-fide holder for value prior to the date of the adjudication. Such property may be recovered or its value collected from whomever may have received it, except a bona-fide holder for value."

While in a sense the trustee in the exercise of the powers authorized under this and other sections of the act, may be said to be the *alter ego* of the creditors in that his action is for their benefit, he is, in law and in fact but an arm of the court and acts not for the credit-

ors individually or collectively, but for the estate (In re Morton, 118 Fed. 908). The powers of the creditors as such, cease upon the adjudication of bankruptcy and the allowance of their claims, and thereafter they possess neither power to sue nor be sued in any proceeding to collect, control, preserve or recover the assets, the entire administration of the estate being invested in the trustee to be exercised under the direction of the Court (Coleman v. Hagey, supra; Blake v. Meadows, 225 Mo. 1. c. 26). The merger of the identity of the creditors in the estate, therefore, in that they are stripped of all power after the adjudication, renders their specific designation in a petition of the character here under review unnecessary. [Barrett v. Kaigler, (Ala.) 76 So. 320, 40 Am. B. R. 161; Cartwright v. West, (Ala.) 64 So. 293.]

The nature of the decree to which the trustee is entitled, when a fraudulent conveyance is set aside, is a further indication of the immateriality of the allegation urged. Upon the rendition of the decree, the property inures not to the benefit alone of the unsecured creditors, existing at the time of the transfer, and who, in the absence of bankruptcy, would have been authorized to attack the conveyance; but to all of the creditors having provable claims, including those whose claims accrued subsequent to the transfer (In re Kohler, 159 Fed. 871; In re Farmers' Co-op. Co., 202 Fed. 1008). Considering, therefore, the nature of the proceeding and the character of the decree that may be rendered therein, it will be sufficient for the petition, in so far as the contention here made is concerned, to allege that there were unsecured creditors existing at the time of the transfer, the aggregate amount of their claims, and that the assets of the estate are insufficient to satisfy the same (Treseder v. Burgor, 130 Wis. 201; Davis v. Gates, 37 Am. B. R. 1. c. 482). This requirement is met by the petition.

Nor is it necessary that the creditors be designated

to inform the defendant of the nature of the action. Their particular indentification can constitute no element of the defense; and if necessary for any of the purposes of the proceeding their introduction therein must be regulated by the rules of evidence, and not of pleading.

IV.   The further contention is made that the petition does nót state the amount or nature of any claim to which the property sought to be recovered can be applied. Much of the reasoning and the authorities cited in support of same to show the unsoundness of the preceding contention may well be applied to demonstrate the lack of tenability of that here made.

Amount or Nature of Claims.

It will only be necessary therefore, to say in addition, that when a decree is rendered, setting aside a conveyance, the property recovered becomes a part of the general assets of the bankrupt estate, and is so distributed in the pro-rata payment of all ·claims of a like character. The assumption, therefore, that upon a recovery of property by a trustee in a proceeding of' the character here involved, it can be applied to the payment, of any particular claim, is wholly unfounded.

Sustained by reason, and approved by numerous authorities, we hold the petition herein sufficiently states all of the material allegations necessary to clearly present the issues involved, and that the objections made thereto by the defendant are not tenable.

V.   The admission of testimony to show the amount of secured claims against the estate is assigned as error. A material allegation had been made in the petition that the assets of the estate then in possession of the trustee were insufficient to satisfy the claims against the estate. The introduction of testimony, therefore, as to all of the claims, whether secured or unsecured, was necessary to sustain this allegation.

Testimony.

Objection to the admission of testimony as to other claims are based upon the ground that they had not been reduced to judgment, and hence were not such claims as were admissible as tending to show the financial condition of the bankrupt. The testimony admitted was only in regard to claims which had been allowed by the bankruptcy court, and, as we have shown, partook of the nature of judgments. No error was committed, therefore, in their admission in evidence. The ruling in Crim v. Walker, 79 Mo. 335, and in Davidson v. Dockery, 179 Mo. 687, cited by defendant in support of this contention, have reference to claims of unsecured creditors in ordinary proceedings in equity, and not in bankruptcy; hence they have no application here.

VI. Error is also assigned in the refusal of the trial court to permit the bankrupt to testify in behalf of his wife, the defendant. This contention

Testimony of Husband. is based on the assumption that the husband is a tenant by the curtesy initiate in the land conveyed to his wife; and that the interest thus created renders him, under Section 6354, Revised Statutes 1909, a competent witness in this proceeding and removes his common law incompetency and the limitation by exclusion to his testimony under Section 6359. This reasoning would have been more cogent if he had been made a party to the suit and his right to testify had been based on an interest acquired in his wife's property prior to the enactment of the Married Woman's Act in 1889, when the husband was, upon the birth of living issue, seized of an estate for life in his own right as a tenant by the curtesy initiate. Since the enactment of this statute, however, the wife as to the control and conveyance of her separate property is *sui juris,* and as such clothed with the right to sell her land and make a deed thereto independent of her husband. The consequent effect of this grant of power is to destroy the

tenancy by the curtesy initiate, because it can no longer exist as an estate or intesest in the husband in the presence of the wife's complete power of disposal of her property, but is reduced to a mere interest in expectancy.

This conclusion finds its sufficient support in the language and purpose of the Married Woman's Act itself, which provides as to the matter here at issue, that she shall be deemed a *femme sole,* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her; and that, in law or equity, she may sue or be sued without her husband being joined as a party. [Sec. 8304, R. S. 1909.]

In construing this statute, we have explicitly held in Farmers' Bk. v. Hageluken, 165 Mo. 446, that it empowers a married woman to convey her real estate without joining her husband in the deed.

Further than this, that she may grant power to an agent to make a binding contract for the sale of her land or to ratify such a sale when made. [Kirkpatrick v. Pease, 202 Mo. 471.]

These rulings are in evident accord with the spirit and purpose of the act, the effect of which as we have stated, in conferring upon a married woman the absolute power of disposal of her property, destroys whatever present estate the husband may have therein, which would, prior to the enactment of the statute, have qualified him, by reason of interest, to testify in a suit brought by or against her concerning her separate property.

A contrary ruling is impliedly announced in Roberts v. Bartlett, 190 Mo. 1. c. 702, in which it was held, in a suit brought by wives and husbands, as joint plaintiffs, after the enactment of the Married Woman's Act, concerning the separate property of the former,

that the latter were competent witnesses on account of their material interests in the properties, as tenants by the curtesy initiate. This ruling is erroneous, so far as it is based upon the assumption that the interest named exists in the husbands to the extent of rendering them competent to testify under Section 6354; such interest being, as we have shown, non-existent since the enactment of the Married Woman's Act. Aside from this ruling, based as well upon the fact that the husbands were co-plaintiffs, not the case here, the current of authority is in harmony with that announced in the Hageluken case, as to the complete dominion and right of disposal by the wife of her separate property, and the consequent absence of such an interest therein by the husband as to render him a complete witness in a suit against her.

Whatever doubt may seem to be cast on the Hageluken ruling by certain language employed in Myers v. Hansbrough, 202 Mo. 495, is dissipated by an analysis of the facts in that case, in which the question involved was one of tenancy by the curtesy consummate, and not initiate. The wife died, seized of real estate. Issue had been born alive, and upon the wife's death curtesy was cast upon the husband. The sole question upon which the language of the court could have any ruling force was one of preference between the creditors of the wife who had no lien, and the husband, as the owner of the estate by the curtesy consummate. This was independent of any consideration of the interest of the husband during the life of the wife. The expression, therefore, in that case, that curtesy initiate constitutes a vested interest cannot reasonably be construed as more than a passing remark, and being responsive to no issue is determinative of nothing. Otherwise construed, the effect of the Myers case is to declare that a husband can have a vested interest by the curtesy initiate in his wife's real estate, contemporaneously with her power under the statute of 1889, to convey

same and invest the grantee with an absolute fee therein. Such a construction limits the letter and destroys the purpose of the Married Woman's Act. It it repugnant to reason, and, despite the remark made in Teckenbrock v. McLaughlin, 246 Mo. l. c. 717, that "there are two lines of authority in this State on this question," the rulings here and elsewhere will be found in accord with that in the Hageluken case. The Teckenbrock case did not attempt, nor was it necessary for it to define the nature of a husband's interest as a tenant by the curtesy initiate in his wife's property since the enactment of the Married Woman's Act. All that it did decide was that when suit was brought *by a husband and wife* to set aside a will, it could not be maintained on the ground of the husband's interest as tenant by the curtesy initiate in the property of his wife acquired by descent since the statute of 1889. That nothing therein gave any authority to the maintenance of an action of this character under Section 555, Revised Statutes 1909, defining who may contest the validity of wills; and for the additional reason that the issue was *res adjudicata,* in having been determined in a former proceeding identical in its character.

Apposite precedents affirming the rule announced in the Hageluken case are to be found in Kirkpatrick v. Pease, 202 Mo. l. c. 490; Harvey v. Long, 260 Mo. l. c. 391; Moseley v. Bogy, 272 Mo. 328; Haguewood v. Britain, 273 Mo. l. c. 92; and Regal Realty & Inv. Co. v. Gallagher, 188 S. W. (Mo.) l. c. 153.

The ruling of the trial court, therefore, as to the incompetency of the husband to testify, was not error; first, because he was not a party to the proceeding, and second, because he had no material interest in the judgment to be rendered within the meaning of Section 6354. See Layson v. Cooper, 174 Mo. l. c. 223, and cases cited, discussing the competency of husband and wife as witnesses under facts similar to those at bar.

VII. The relief sought was the setting aside of the fraudulent conveyance under which it was alleged that **Decree.** the defendant held the land. Other than formal allegations necessary to properly plead this character of action, the petition specified the existence of a prior lien, evidenced by a mortgage and homestead interest in the land, to which it was prayed that the decree, if rendered, be made subject. The answer contained nothing which in any way extended the issue, its defensive character being limited. wholly to a general denial.

Aside from the introduction in evidence of the existence of a mortgage for $1000 placed on the land by defendant, subsequent to its transfer to her, the record is silent on this subject. Despite this fact, the trial court, while finding the conveyance to the defendant fraudulent, and that the decree should be rendered subject to the pre-existing mortgage and homestead interest, also found that it should be subject to the $1000 mortgage placed on the land by the defendant. This latter finding was unauthorized. It was not an issue in the case, and was not admitted to be so made by the parties. [Welz v. Venard, 253 Mo. 67; Davidson v. R. Est. & Inv. Co., 249 Mo. 474; Howard v. Scott, 225 Mo. 685; Charles v. White, 112 S. W. 545; Schneider v. Patton, 175 Mo. 684.]

The rule, therefore, that in a chancery case any relief may be granted consistent with the pleadings, can have no application here. [Ames v. Gilmore, 59 Mo. 537.]

Nor need the rule, in the condition of the pleadings, be invoked that if the conveyance be fraudulent, the defendant got no title, and hence could convey none. [Peyton v. Rose, 41 Mo. 257.]

But it will suffice to say that the decree should have been limited to a determination of the character of the conveyance under which the defendant held the land subject to pre-existing liens, as stated in the peti-

tion. A finding other than this did not respond to the issues, and was consequently error.

This will necessitate a reversal and remanding of this case, with directions to the trial court to enter a decree in accordance with the views herein set forth. It is so ordered.

All concur, except *Blair, J.*, not sitting; *Faris* and *Williams, JJ.*, concur in the result and in all except paragraph 6.