## IGNATIUS v. FARMERS' STATE BANK OF HAVRE, MONT.

(Circuit Court of Appeals, Ninth Circuit. April 4, 1921.)

No. 3480.

1. **Bankruptcy ⬅185—Trustee takes right of creditors and may avoid a fraudulent conveyance.**

Under Bankruptcy Act, § 47a, subd. 2, as amended by Act June 25, 1910, § 8 (Comp. St. § 9631), and in view of sections 70a and 70e (section 9654), a trustee in bankruptcy is deemed vested with all the rights and powers of a creditor holding an unsatisfied execution, and may avoid any transfer fraudulent as to creditors which a creditor might have avoided, had bankruptcy not intervened.

2. **Bankruptcy ⬅304—Whether chattel mortgage, attacked by trustee in bankruptcy, was in fraud of creditors, for the jury.**

In an action by a trustee in bankruptcy to set aside chattel mortgages given by the bankrupt, the question whether the mortgages were, under Rev. Codes Mont. § 5758, as amended by Laws 1913, c. 86, and sections 6127, 6130, in fraud of creditors, being intended to hinder and delay them, *held*, under the evidence, which was conflicting, for the jury.

In Error to the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

Action by W. L. Ignatius, as trustee of the estate of J. R. Crites, bankrupt, against the Farmers' State Bank of Havre, Mont. Judgment for defendant, and plaintiff brings error. Reversed, with direction to grant new trial.

Freeman & Thelen and G. S. Frary, all of Great Falls, Mont., for plaintiff in error.

Victor R. Griggs and Arthur F. Lamey, both of Havre, Mont., and James E. Colston and L. S. Hamm, both of San Francisco, Cal., for defendant in error.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

MORROW, Circuit Judge. This action was brought in the lower court by W. L. Ignatius, as trustee of the estate of J. R. Crites, bankrupt, as plaintiff, against the Farmers' State Bank of Havre, Mont., as defendant. The action arises out of the liquidation of the estate of

the bankrupt, J. R. Crites, and is for a decree declaring certain mortgages null and void and for the specific recovery of the sum of $16,000 from the defendant bank.

The action involves the question of the validity of three certain chattel mortgages given by the bankrupt, J. R. Crites, to the defendant, Farmers' State Bank, under date of October 11, 1917, for an indebtedness amounting to the sum of $22,837. These three chattel mortgages covered all of the property of the bankrupt, and it is the contention of the plaintiff in error, and as alleged in the complaint, that the three chattel mortgages are and were null and void, so far as the creditors of the bankrupt, Crites, are concerned, by reason of the fact that they were given to hinder, delay, and defraud the creditors of the said bankrupt.

Prior to the execution of the mortgages in question, the bankrupt and defendant bank had been operating under a certain business arrangement having the earmarks of a joint adventure. Plaintiff in error alleged that the defendant bank knew at the time of the execution of the chattel mortgages that the bankrupt was indebted to other creditors, and that the bank knew or had reasonable cause to believe that the bankrupt was insolvent, and that his property or the property of his business at a fair valuation was not sufficient to pay his indebtedness in full; that the chattel mortgages were excuted by the bankrupt, Crites, at the solicitation of the defendant bank, with the suggestion and inducement to the bankrupt that it would prevent other creditors of the bankrupt from collecting their debts by an action at law; that the said chattel mortgages were accepted by the Farmers' State Bank with the fraudulent intention to hinder, delay, and defraud the other creditors of the bankrupt; and that the purpose of the bankrupt and defendant bank in executing and accepting the chattel mortgages was to hinder, delay, and defraud the other creditors of the bankrupt, by preventing the creditors from collecting their claims by an action at law, and said transfers were in fraud of the creditors of the bankrupt, Crites, and in violation of the bankruptcy laws of the United States (Comp. St. §§ 9585–9656), and of the laws of the state of Montana, and especially sections Nos. 5757 to 5773, inclusive.

Defendant filed its answer, denying the above, and alleging that the chattel mortgages were executed to secure an indebtedness of $22,825. Plaintiff filed his reply, denying the allegations in general of defendant's answer, and, upon the trial of the action before a jury, evidence, both oral and written, was introduced by both plaintiff and defendant. Upon the close of the case, defendant moved the court to direct the jury to return a verdict for defendant on the ground of failure of proof, and the court ordered that said motion be granted, and directed the clerk to enter such verdict, to which plaintiff took exception. The mortgaged property was sold under the mortgage and purchased by the defendant. It is not charged that there was any irregularity in such proceedings.

[1] Section 47a, subdivision 2, of the Bankruptcy Act, as amended June 25, 1910 (36 Stat. 838–840, § 8; Comp. St. § 9631), provides:

"* * * And such trustees, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon; and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied."

The Supreme Court of Missouri, commenting on this provision of the Bankruptcy Act, in Riggs v. Price, 277 Mo. 333, 344, 210 S. W. 420–423, said:

"This provision must be construed together with these portions of sections 70a and 70e of the act (In re Hammond [D. C.] 188 Fed. 1020), which further emphasizes the vesting of the title of the bankrupt's property in the trustee, and expressly includes property transferred by him in fraud of his creditors, and authorizes the trustee to institute actions to avoid any of such transfers which any creditor might have avoided by a suit in a bankruptcy court, or in a state court, which would have jurisdiction if bankruptcy had not intervened (Parker v. Sherman [D. C.] 195 Fed. 648, 28 Am. Bankr. Rep. 379). The trustee is thus subrogated to the rights of the creditors, and the limitation as to his right of action is that prescribed by the state law as to proceedings to set aside fraudulent conveyances, and not to the four months of the Bankruptcy Act. Baldwin v. Kingston (U. S. Dist. Ct. N. J.) 40 Am. Bankr. Rep. 641, 247 Fed. 163; Manders v. Wilson (D. C.) 230 Fed. 536; Holbrook v. Infer. Tr. Co., 220 Mass. 150, 107 N. E. 665; Blick v. Nimmo, 121 Md. 139, 88 Atl. 116; Hobbs v. Frazier, 61 Fla. 611, 55 South. 848; Newcomb v. Bimer (D. C.) 199 Fed. 529; Hall v. Glenn (D. C.) 39 Am. Bankr. Rep. 54, 247 Fed. 997; McKenna v. Simpson, 129 U. S. 506, 9 Sup. Ct. 365, 32 L. Ed. 771."

[2] Turning to the law of the state of Montana on this subject, we find it provides, in section 5758 of the Civil Code of that state, as amended in 1913 (Laws 1913, c. 86), that:

"Any interest in personal property which is capable of being transferred may be mortgaged.

"A mortgage of personal property must be signed by the mortgagor, and be acknowledged by the mortgagor before some officer qualified to take acknowledgments; and every such mortgage must have attached thereto the affidavit of the mortgagee, his agent, attorney, or other representative, that the same is made in good faith to secure the amount named therein, and without any design to hinder, delay or defraud creditors; and where there are two or more mortgagees named in a mortgage, whether copartners or otherwise, any one of said mortgagees may make such affidavit on behalf of all the mortgagees named therein. No further proof or formality of the execution of said mortgage is required to admit it to be filed."

## Section 6127 of the same Code of 1907 provides:

"Every transfer of property, or charge thereon made, every obligation incurred, every judicial proceeding taken, and every act performed, with intent to delay to defraud any creditor, or other person, of his demands, is void against all creditors of the debtor and their representatives or successors in interest, and against any person upon whom the estate of the debtor devolves in trust for the benefit of others than the debtor."

## Section 6130 of the same Code of 1907 provides:

"In all cases arising under section 4688 (1650), or under the provisions of this title, except as otherwise provided in section 6128 (4491), the question of fraudulent intent is one of fact and not of law; nor can any transfer or charge be adjudged fraudulent solely on the ground that it was not made for a valuable consideration."

Was there any evidence tending to show that the transfer of the title of the property described in the three mortgages in suit was with the intent to delay or defraud the creditors of the mortgagor? The mortgages covered all the property of Crites, the mortgagor, and there was evidence tending to show that he was insolvent at that time and that the officers of the bank, the mortgagee, knew that fact.

J. R. Crites, the mortgagor, testified that he was in the automobile business at Havre, Mont., in 1917; that—

"along in September that year the business was showing up pretty poor, not very good; outside of the bank I had creditors who wanted their money coming in every day, almost every day, some salesman or some collector; I stalled them off, couldn't pay them; I didn't have any money; the bank had quit financing the business; they wouldn't give me any money; they said they didn't have any money; wouldn't give me any money; I had all the money I was going to get on that deal; they wouldn't furnish me any money; not during the audit, they wouldn't furnish me any money. After the audit was over, I told them at the bank that my creditors were bothering me, that I would have to do something about it, and they said, 'Stall them along the best I could.' That was before I signed any mortgages. And I stalled them as much as I could stall them.

"As to how I came to sign this note and mortgage for $22,825 on or about the 11th day of October, 1917, they said they would have to have the mortgage fixed up and we would sign it. I went there. * * * I signed the mortgage in the bank. * * * I was there and Blair [the president of the bank] was there, and Mr. McBrayne [the cashier of the bank] was there. I told them that other creditors would jump in and raise a fuss about that; they wanted their money. 'Well,' he says, 'they can't get everything; we have this mortgage; I would like to see them get anything, when we have the mortgage here.' I didn't like to sign the mortgage, because it was too strong, and that is why I got a second agreement, that I wouldn't be kicked out of there in the next day or so; that's all. * * * At the time I executed that mortgage my purpose was to get along until the first of the year, and then pay these bills up, and not have anybody jump on me and put me out of business before the first of the year; and, as I understand it, that was the idea of having me give a mortgage, and after the first of the year the understanding was they would pay it up; they would have more money to pay these claims, or satisfy them in some way, satisfy these creditors. My purpose at that time in giving this mortgage was certainly to hinder the balance of my creditors from jumping in. I didn't want to pay anything then. Upon that occasion Mr. Blair said, if anybody came in and wanted to attach the property, they would have to pay that mortgage off first, and then, he said, we would go across the street and start another garage."

J. J. Blair, the president of the defendant bank, testified:

"I did have a conversation with Mr. Crites relative to what other creditors he owed, at the time we were considering renewal of the mortgage in October, and he stated that all he wanted was a chance; that he had some other small creditors, but he had made arrangements with them to pay them so much a month, and if we could carry him over he would have no trouble with them; and I made the arrangement with Mr. Crites for the giving of the $22,825 note and the three chattel mortgages given to secure that note. During those negotiations Mr. Crites did not at any time give me a list of his creditors, nor did he ever tell me that they were threatening to sue him, any of them. I did not know at that time, or prior to that time, that any of his creditors were threatening to bring legal proceedings; as a matter of fact, he said they were not. I absolutely did not tell him that if he would give me these mortgages I would advance him some money about the first of the year to take up his other debts. I did not tell him that if I got these chattel mortgages I would like to see any other creditor get anything, or words to that effect."

This testimony is conflicting, and we think it presented a question of fact that should have been submitted to the jury.

Judgment reversed, with direction to grant a new trial.