# VAN S. COOKSON

*v.*

# MARY . TOOLE.

1.  MARRIED WOMEN—*of remedies against them upon contracts in respect to their separate property—whether at law or in equity.* So far as relates to the engagements of a married woman, not within the capacity to contract given, by implication, by the act of 1861, the remedy, when a proper case exists, must be sought under the rules in relation to the general contracts of married women and their binding effect upon their separate estates, in equity, as under the old forms of settlement before the statute, because, in that case, the implication of capacity to bind her separate estate arises only in equity.

2.  But the implication of capacity to contract in respect to her separate property arising under the statute, is an implication of law, and being an implication of law, and not of equity, the capacity to contract within the scope of the implication is a legal capacity, and all contracts under it are legal contracts, cognizable by courts of law.

3.  So it is *held*, that an action at law will lie against a married woman to recover for work and labor done and performed at her request, in and about the improvement and cultivation of her farm, and in taking care of her stock thereon, such farm and stock being her sole and separate property, owned and held by her under the provisions of the act of 1861.

4.  FORMER DECISION. So far as the case of *Mitchell* v. *Carpenter*, 50 Ill. 470, holds that the remedy against married women in respect to their contracts relating to their separate estates under the statute, is not at law, but only in equity, a question not involved in that case, it is to be regarded as mere *obiter dicta*.

WRIT OF ERROR to the Circuit Court of Logan county.

Messrs. BEASON & BLINN, for the plaintiff in error.

Mr. JAMES T. HOBLITT, for the defendant in error.

Mr. JUSTICE MCALLISTER delivered the opinion of the Court:

This was an action of *assumpsit*, brought by plaintiff against defendant to recover for work and labor done and performed by plaintiff for the defendant at her special instance and request.

The plea of coverture was interposed, to which plaintiff replied that the work and labor in the declaration mentioned were done and performed in and about the improvement and cultivation of defendant's farm, and in taking care of her stock thereon, which farm and stock were her sole and separate property derived from persons other than her husband, held and enjoyed by her for her sole benefit, and without the control or interference of her husband. The court sustained a general demurrer to the replication and rendered final judgment against plaintiff, who brings the record to this court by writ of error.

The question presented is, whether a married woman, holding property under the act of 1861, can bind herself, at law, for work and labor performed in respect to property so held, and is one which has not, heretofore, been directly presented in this court.

In the absence of any statutory provisions, the separate estate of a married woman is the mere creature of equity. Having recognized her separate estate, courts of equity were constrained, by the logic of the position, to regard her as clothed with a qualified capacity by implication, and in some instances even beyond the capacity conferred by the instrument of settlement, to deal with respect to such separate property as a *feme sole.*

There is a conflict of authorities upon the question, whether, in case the instrument under which she acquired her separate estate specified the mode and purposes of alienation or disposal, she could dispose of it in any other mode, or for any other purpose than that pointed out; or whether she could sell, convey, alienate, or in any way charge her separate estate, unless such power was expressly given her in the deed of trust or settlement. The decisions in England and New York, though somewhat conflicting, hold, in substance, that a *feme covert,* with respect to her separate property, is to be regarded in a court of equity as a *feme sole,* and may dispose of her property without the consent or concurrence of her trustee, unless

specially restrained by the instrument under which she acquired her estate. Perry on Trusts, sections 564, 565, 660 ; *Hulme* v. *Tenant*, 1 Lead Cases in Equity, * 394, and cases in notes.

In *Swift* v. *Castle*, 23 Ill. 209, this question was presented, and in the opinion of the majority of the court and the dissenting opinion of Mr. Justice Breese, the authorities bearing upon both sides of the question were laboriously collected and fully reviewed, and although a majority of the court held that a married woman could only convey her trust property in the manner authorized and for the purpose specified in the instrument creating the trust, if it contains any such provisions, yet it was conceded that, in the absence of such provisions, and property is conveyed or devised to her separate use, *equity* gives her the power of controlling it by sale or otherwise. Again, the authorities present a further conflict upon the extent of her capacity in equity, and whether her general contracts could be satisfied out of her separate estate. In England it was held that if a married woman, having property to her separate use, give a written instrument to pay money, the implication of law is, that she intended to charge her separate estate. Perry on Trusts, sections 657, 659, 660.

In New York, her power in equity was limited to the power of contracting in relation to her separate estate, or for the benefit of such estate, or for her own personal benefit upon the faith and credit of such estate. By that rule, her general engagements, which have no reference at the time to her separate estate, or to her own personal benefit, can not be enforced against such separate estate. Perry on Trusts, sec. 660, and cases cited in notes.

The origin of the recognition by equity of a wife's separate estate is traceable, we apprehend, to the early and unquestioned jurisdiction of the court of chancery over trusts, and the primary purpose was to effectuate the intention of the settler or donor that she should enjoy certain property set apart for her use, to the exclusion of the marital rights of the

husband, and free from his interference and control.   When such intention clearly appeared, and no trustee was appointed, the court of chancery would protect her interest in the property against the creditors of the husband, and he would be considered as a trustee, notwithstanding he was not a party to the instrument under which the wife claimed. 2 Kent's Com. 162, 163.

When the court assumed cognizance of such trusts, and sought to carry the intention of settlers and donors into effect, the subject became, and ever has been, beset with difficulties, growing out of an attempt to recognize the principles of the common law, and at the same time to apply the principles of equity.   At the common law the husband and wife are treated, for most purposes, as one person. • The very being or legal existence of the woman, as a distinct person, is suspended during the marriage ; or, in other words, is incorporated and consolidated with that of her husband.   The husband became entitled to receive the rents and profits of his wife's lands during their joint lives ; he became absolutely entitled to all of her personal property in possession, and to all her *choses in action* if he reduced them to possession, during his life.   She could bind herself by no contract, not even for necessaries. But, if the intention of the settler or donor was to be carried into effect, and the trust enforced, it became necessary for equity to treat husband and wife, for many purposes, as the civil law treats them, as distinct persons.   2 Story Eq. Jur. sec. 1368.   The scope of the trust was to provide for the wife's enjoyment of property exempted from the marital rights of the husband, and freed from his interference or control. Such enjoyment must be such, in a measure at least, as was incident to the ownership of property, by persons not under disability.   To this end she must be deemed invested with a qualified capacity wholly denied by the common law, to deal with respect to her separate estate by contracting ; or, as equity judges were accustomed to say, by entering into *engagements* with respect to such separate estate.

From this recognized right of enjoyment, then, also was recognized a reciprocal obligation in equity, of having such estate chargeable with the performance of such engagements— the essence, however, being that she was clothed with a qualified capacity, by implication, of incurring debts and liabilities to be paid out of her separate property, and to incur debts and liabilities, is, after all, but making contracts.

But, as the estate itself was a matter of purely equitable cognizance, so were the incidents belonging to it. These engagements, liabilities or contracts were still unrecognized by the common law ; they did not bind her personally, but were subject to enforcement only in equity, and *there* only against her separate estate, the creature of equity.

Such being the general character and incidents of the separate estate of a married woman before the statute of 1861, it remains to be considered what ·change, if any, was effected thereby. That there was a material change produced as to the nature of the estate and many of its incidents, there can be no doubt. For, by the statute, she may take the legal title to property both real and personal, when derived from persons other than her husband, wholly exempt from the marital rights of the husband at common law, and free from his control or interference during coverture. Such property, the statute declares, "shall be and remain, during coverture, her sole and separate property, under her sole control, and be *held, owned, possessed and enjoyed* by her the same as though she were sole and unmarried."

An estate so derived is no longer the mere creature of equity, dependent upon its power alone for protection, and its principles for the right of enjoyment; but, in all cases, when, by the nature of the gift, bequest, devise, conveyance or deed of settlement, an absolute legal title would be vested in a *feme sole,* the same title would, under the statute, be vested in a *feme covert,* and the property be held, owned, possessed and enjoyed by her the same as though she were sole and unmarried. When the estate is thus transformed from an *equitable*

to a *legal* estate, all of the rights incident to it must be legal rights. So far as the statute goes, her disability and her husband's marital rights are alike swept away. When her right of property is invaded, even though by her own husband, instead of applying to equity for redress, as formerly, she may now resort to the appropriate action at law. *Emerson* v. *Clayton,* 32 Ill. 493.

If the right to a separate estate, as recognized by equity before the statute, carried with it, by implication, a qualified capacity to deal with it as a *feme sole,* why does not the legal right conferred by the statute carry with it, by implication, all that degree of legal capacity necessary to the enjoyment of such legal right? For, how can she possess and enjoy a separate estate which is made subject to her sole control, the same as though she were unmarried, unless she can put it to the same uses that an unmarried woman might? An unmarried woman has the same legal capacity, the same right of control over her own property, if of full age, as a man may have.

In the case at bar, the separate estate, as is alleged in the replication, was derived from persons other than defendant's husband; it consisted of a farm under cultivation, with implements and stock, subject to her sole control, and managed for her sole use and benefit. The measure of her right to hold, own, possess and enjoy this property, is that which an unmarried woman would have. This right must, by necessary implication, carry with it all the incidents to such a degree of enjoyment of property, and one of those incidents is a legal capacity to contract for servants and laborers. For, without such a capacity, and with the known incapacity to make such contracts, her horses might die for want of surgical aid, her stock perish in winter for want of care, and her fields go uncultivated in spring for want of a farmer to till them.

In *Mitchell* v. *Carpenter,* 50 Ill. 470, the court said: "It may be said that a married woman can not adequately enjoy her separate property unless she can make contracts in regard to it. This is true, and hence her power to make contracts so

far as may be necessary for the use and enjoyment of her property, must be regarded as resulting by implication from the statute. If she owns houses, she must be permitted to contract for their repair or rental. If she owns a farm, she must be permitted to bargain for its cultivation and to dispose of its products."

That case was an action at law against a *feme covert* and her husband, to recover upon a promissory note given for the purchase of land, and it was held that she was not liable. The correctness of the decision of the case is not questioned. There, the contract was one not falling within the implied capacity given by the statute. But, at the close of the opinion, it was said: "We will further add that, in our opinion, all remedies against married women upon contracts, even if they relate to their separate property, should be sought upon the equity side of the court, where such kind and degree of remedy may be given as the nature of each case and the equities of the parties may require, and where jurisdiction over the property rights of married women has ever resided."

These observations, so far as they related to the transaction involved in that case, were, doubtless, correct; but, so far as they related to contracts in respect to her separate estate, under the statute—a question not there involved—they must be regarded as mere *obiter dicta*. They appear to inadvertently assume that the separate estate of a married woman, even under the statute, is still a mere creature of equity—whereas, in the aspect of it under consideration, in the case at bar, it must be regarded as an absolute legal estate, in which case the rights incident to it must be legal rights, for the redress of which she may have an action at law, even against her own husband, as was said in *Emerson* v. *Clayton, supra.*

So far as relates to her engagements not within the capacity given by implication of the statute, the remedy, where a proper case exists, must be sought under the rules in relation to the general contracts of married women and their binding effect upon their separate estates, in equity, as under the old

forms of settlement. Because, in that case, the implication of capacity to bind her separate estate arises only in equity. But the implication of capacity to contract in respect to her separate property, arising under the statute, is an implication of law, and being an implication of law, and not of equity, the capacity to contract within the scope of the implication is necessarily a legal capacity, and all contracts under it must be legal contracts, cognizable by courts of law.

It is the opinion of the court that the matters alleged in the replication, to which the court sustained the demurrer, were sufficient in avoidance of the plea of coverture, and that the demurrer should have been overruled.

The judgment of the court below is reversed and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed.*