FARMERS EXCHANGE BANK et al. v. HAGELUKEN et al., Appellants.

In Banc, December 3, 1901.

**Married Women:** CONVEYANCE OF REAL ESTATE: VALIDITY OF DEED OF TRUST. Under section 6864, Revised Statutes 1889, vesting a married woman with power to transact business on her own account and to make contracts, and section 6869, providing that real estate belonging to a married woman shall be her separate property, a married woman may convey the legal title by her deed of trust, without her husband joining therein, of lands acquired by her since the passage of such laws, to secure her notes. (Overruling Brown v. Dressler, 125 Mo. 589.)

Appeal from Scotland Circuit Court.—*Hon. E. R. McKee,* Judge.

AFFIRMED.

*R. D. Cramer, Lewis Myers* and *J. M. Jayne* for appellants.

Appellant Isabella Hageluken was at the time of the execution of the trust deed sought to be foreclosed in this action, a married woman, living with her husband, she having obtained the property in controversy by deed from one William Commans. The land in this suit, under the evidence, was not her

separate estate. There were no words in the deed excluding the marital rights of her husband, and under the repeated decisions of this State the conveyance made by her, without the joining of her husband, was void. Bartlett v. Roberts, 66 Mo. App. 125, and authorities therein cited. A married woman can make an equitable conveyance of her equitable separate estate without her husband joining in the conveyance, but that does not apply in this case. It is a well-settled principle of law in this State that she can only convey her estate in the manner prescribed by the statute. Gwinn v. Turner, 101 Mo. 551; Rush v. Brown, 101 Mo. 586; Shafer v. Kugler, 107 Mo. 58; Richardson v. De Giverville, 107 Mo. 422. And this principle has not been changed by section 6869, of Revised Statutes 1889. Brown v. Dressler, 125 Mo. 589; Bearden v. Miller, 54 Mo. App. 201. The deed from William Commans and wife to Isabella Hageluken conveyed to her a legal estate. We must look alone to the deed to ascertain what estate was granted. We can not consider facts *dehors* the deed. Schafroth v. Ambs, 46 Mo. 580; Paul v. Leavitt, 53 Mo. 596; Hickman v. Hickman, 55 Mo. App. 309; Nicholson v. Flynn, 24 Mo. App. 571.

*N. M. Pettingill* for respondents.

Appellant, although a married woman, was estopped from denying that the lot in question was her separate estate by her recital in her deed of trust that the lot was "her own separate property, having come to her from her father's estate." All real estate which may have come to a married woman during coverture by inheritance shall be and remain her separate property and under her sole control. R. S. 1889, sec. 6869. In those States where the right is given to a married woman to contract in reference to her separate property and to sue and be sued as if she were sole, she may be estopped by the recitals in her deed in the same way and to the same extent as if she were

unmarried. Knight v. Thayer, 125 Mass. 25. Married women were not estopped at common law, but the rule is greatly changed by the "Married Women's" statutes. With regard to her separate estate a married woman is practically *sui juris* and may be estopped. Jones v. Reese, 65 Ala. 134; Howell v. Hale, 5 Lea (Tenn.), 405; Powell's Appeal, 98 Pa. St. 403. Particular and definite recitals are conclusive evidence of the material facts stated. 7 Am. and Eng. Ency. of Law, p. 7. Hence, we claim that her recital was binding upon her by way of estoppel. It has been distinctly held in our State that as to the property of which she has the *jus disponendi,* the chief attribute of ownership, she is *sui juris,* and as a consequence is as much capable of being estopped as any other property-owner, so far as concerns the outside world. Leete v. State Bank, 115 Mo. 184; Henry v. Sneed, 99 Mo. 425.

## In Division Two.

SHERWOOD, P. J.—This proceeding was instituted against Isabella Hageluken and her husband to foreclose a certain deed of trust, given to secure certain promissory notes in suit, which notes and deed were executed by Isabella while covert; her husband did not join in executing such deed, and upon this ground she resisted the suit of foreclosure, asserting that her husband did not join with her in the execution of the trust deed, and for this reason she was incompetent to convey the land mentioned in the deed aforesaid. The title to the land in suit accrued to Isabella in 1891, by reason of a conveyance to her in that year. At the close of the evidence on part of plaintiffs, defendants asked of the court a declaration of law in the nature of a demurrer to the evidence, and contending for the same point made in defendant Isabella's answer. All the evidence being closed, judgment went for plaintiffs, hence this appeal.

The record thus shows that the only dominant feature in this cause is whether Isabella, under statutes in existence at the time, was capable of making the litigated contract.

In Blair v. Railroad, 89 Mo. 383, one of the main questions to be determined was whether a married woman could, without joining her husband, execute a valid release for personal injuries inflicted upon her. In determining this point, section 3296 of the Married Woman's Act, U. R. Stats. Mo. 1879, was passed upon, the language of that section then being: "Any personal property, including rights in action, belonging to any woman at her marriage, or which may have come to her during coverture by gift, bequest, or inheritance, or by purchase with her separate money or means, or be due as the wages of her separate labor, or have grown out-of any violation of her personal rights, shall, together with all income, increase and profits thereof, be and remain her separate property, and under her sole control, and shall not be liable to be taken by any process of law for the debts of her husband. This section shall not affect the title of any husband to any personal property reduced to his possession with the express assent of his wife; provided, that said personal property shall not be deemed to have been reduced to possession by the husband by use, occupancy, care or protection thereof, but the same shall remain her separate property, unless by the terms of said assent, in writing, full authority shall have been given by the wife to the husband, to sell, incumber, or otherwise dispose of the same for his own use and benefits," etc. And upon the language thus employed, it was ruled that the words "her separate property and under her sole control" made her, so far as concerned the personal property and rights in action in that section mentioned, a *feme sole,* since it clothed her with the *jus disponendi* of that property, thereby making her *sui juris* with regard thereto; and this being the case, the release by the wife of personal injuries, though executed by her alone, was valid, and juncture of her husband unnecessary. This case has since met

with frequent approval. [Brown v. Bowen, 90 Mo. 184; Broughton v. Brand, 94 Mo. 169; Gilliland v. Gilliland, 96 Mo. 522.]

Subsequent to the ruling made in Blair's case, there have been several additions made to section 3296. Thus in 1883 (Laws 1883, p. 113), these words were added at the bottom of that section: "And any such married woman may, in her own name and without joining her husband as a party plaintiff, institute and maintain any action, in any of the courts of this State having jurisdiction, for the recovery of any such personal property, including rights in action, as aforesaid, with the same force and effect as if such married woman was a *feme sole*: provided, any judgment for costs in any such proceeding rendered against any such married woman may be satisfied out of any separate property of such married woman, subject to execution."

And in 1889, at the so-called revising session, at the beginning of section 3296, were added the words, "all real estate." [U. R. Stats. 1889, section 6869.] Not only did the Legislature, at said revising session, make the addition just mentioned, that of including real estate among the property placed under a married woman's sole control and made her separate property, but further advancement at the same session was made in the same liberal direction, by the enactment of an entirely new section, section 6864, which reads as follows: "A married woman shall be deemed a *feme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for and against her, and may sue and be sued at law or in equity, with or without her husband being joined as a party: Provided, a married woman may invoke all exemption and homestead laws now in force for the protection of personal and real property owned by the head of a family, except in cases where the husband has claimed such exemp-

tion and homestead rights for the protection of his own property."

. If, under section 3296 as it originally stood, the personal property and rights in action became a married woman's separate property and under her sole control; and if as to such property she became a *feme sole* and could execute alone a valid release for injuries done her, it is difficult to see why larger and more comprehensive rights did not accrue to, and become hers, by reason of the broad provisions of section 6864, aforesaid. We hold that they did, and that under that section she had full power to contract with, and to deal with, strangers, or indeed with any one else to the full extent of the property rights mentioned in that section, and such contracts when made were followed by such results as attend the contracts of all others. To hold otherwise would be to ignore the plain and broad language of that section, as well as to ignore the evident progress made in our legislation toward the ultimate emancipation of married women from the shackles by which she was fettered at common law, and by the final consummation of that purpose by the enactment of existing statutes.

The same view as to the effect of such statutes is maintained in other States which have enacted similar legislation. Thus, in Maine, the statute provided that: "The contracts of any married woman, made for any lawful purpose, shall be valid and binding, and may be enforced in the same manner as if she were sole," etc. And upon this statute it was ruled that a married woman was bound as surety on a promissory note which she had signed with a stranger, APPLETON, C. J., remarking: "The wisdom or expediency of this act is a matter solely for the Legislature. Its language is most general, and there can be no reasonable doubt as to its meaning." [Mayo v. Hutchinson, 57 Me. 546.]

Thus, in New York, ANDREWS, J., speaking for the court, said: "The statute of March 2, 1860,.......provides that a married woman may carry on any trade or business and per-

form any labor or services on her sole and separate account, and that the earnings therefrom shall be her sole and separate property.    The power of a married woman to make contracts relating to her separate business is incident to the power to conduct it.    It can not be supposed that the Legislature, while conferring the power upon a married woman to enter into trade or business on her own account, intended that her common-law disability to bind herself by contract should continue as to contracts made in carrying on the business in which she was permitted to engage.    The power to engage in business would be a barren and useless one disconnected with the right to conduct it in the way and by the means usually employed."    [Frecking v. Rolland, 53 N. Y. 422.]

These views are not in accord with those expressed in Brown v. Dressler, 125 Mo. 589, cited for affirmance of the judgment below.    In that case it was ruled that a married woman could not, under the provisions of section 6864, convey her land held by general warranty deed made to her in 1891, unless her husband joined in such conveyance; but still that, under that section, she *could buy land and pledge it or give a lien on it, and that such a contract could be enforced in equity;* as an equitable mortgage which the courts would enforce.    In other words, that under the broad and comprehensive terms of section 6864, a married woman, although expressly empowered thereby to "carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity, with or without her husband being joined as a party," yet after all only possessed a quasi right to contract to a limited extent *just far enough to bind her land in equity.*    And this upon the ground that the statute was *in derogation of the common law,* and, therefore, to be strictly construed; just as if the Married Woman's Act, from its ini-

Vol 165 mo—29

tial statute clear through its progress of expansion and broadening emendations and revisions of fourteen years, was not *always in derogation of the common law.* This was its sole end, aim and purpose.

The statute was designed to confer on a married woman the *legal estate* in her land in as full and complete manner and degree, as if she were a *feme sole.* This is the view taken in Illinois of a statute which provided, that such property "shall be and remain during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as though she were sole and unmarried," McALLISTER, J., remarking: "An estate so derived is no longer the mere creature of equity, dependent upon its power alone for protection, and its principles for the right of enjoyment; but, in all cases, when, by the nature of the gift, bequest, devise, conveyance or deed of settlement, an absolute legal title would be vested in a *feme sole,* the same title would, under the statute, be vested in a *feme covert,* and the property be held, owned, possessed and enjoyed by her the same as though she were sole and unmarried. When the estate is thus transformed from an equitable to a legal estate, all of the rights incident to it must be legal rights. So far as the statute goes, her disability and her husband's marital rights are alike swept away." [Cookson v. Toale, 59 Ill. 515.]

Bishop takes the same position and holds the same theory as to such statutes, saying: "Under the unwritten law, a married woman might hold property in ways which were well defined. If legislation then added to this law a statute, simply providing another way in which she might hold property, the presumption was, that, since she was still a wife, the lawmaking power meant it should be in her hands, wife's property. As to it, in the same manner as to everything else, she would remain/under the established restraints of coverture. But if the statute went further, and provided that the property should be hers in the same manner as though she were unmarried, this

further provision would directly negative the presumption, and make the woman a *feme sole* as respects this estate, both at law and in equity.. Consequently she could sell it, or enter into contracts regarding it, precisely the same as though she were still unmarried. The author can perceive no way in which it is possible for this conclusion to be avoided."

If section 6864 confers a legal estate on a married woman, and if it gives her full power to contract and be contracted with, then the result of such a contract, if it take the form of a deed of conveyance, of necessity, must pass the legal title, and not create a mere pledge or equitable lien.

In Arnold v. Willis, 128 Mo. 145, it was held that a married woman, under the provisions of sections 6869 and 6864, could maintain ejectment in her own name. Of course, the sole basis of such maintenance of ejectment, must be the possession of the legal title. To the like effect is Bains v. Bullock, 129 Mo. 117.

Being the possessor of the legal title, a married woman's deed must be as broad in its conveying power as that legal title and her capacity to "contract and be contracted with," and would consequently pass that legal title or it would pass nothing. To hold to the opposite of this would be to reject the plain meaning of the statutory words; to dwarf, cripple and pervert that meaning in utter disregard of the whole history of our progressive legislation on the subject under discussion.

Instances have been cited in Brown v. Dressler, 125 Mo. loc. cit. 595, where an equitable lien has been created by an imperfect conveyance or contract to convey, following the familiar rule in equity. [Adams Eq. (8 Ed.), 121.] But no instance can be found in the books, either of court-writer or text-writer, where such equitable lien was held to be created, where a transaction took place between a man or woman and third parties, unless the grantor in the attempted conveyance was *sui juris, and had the power, without assistance, to make a valid conveyance. Such status of sui juris, and such power*

*to convey, are denied* in the case under comment, *and yet the power to create an equitable lien is asserted.*

For these reasons we shall decline to follow the ruling in Brown v. Dressler, but on the contrary declare that Isabella received a full complete legal title by reason of the quitclaim deed made to her; and that she conveyed a title of like nature when she executed the deed of trust.' And further that her husband was not a necessary party in this litigation.

Holding thus, we affirm the judgment. All concur.

## IN BANC.

PER CURIAM.—The foregoing opinion of SHERWOOD, J., in Division Two, is approved and adopted by the Court in Banc. *Burgess, C. J., Sherwood, Robinson* and *Marshall, JJ.,* concur; *Brace, Valliant* and *Gantt, JJ.,* dissent.