## THOMAS BROOK v. SYLVESTER BARKER and ANNIE E. BARKER, Appellants.

### Division Two, March 7, 1921.

1. **APPELLATE PRACTICE:** Verdict for Right Party: Decision on Point Not Raised by Instructions. Plaintiff sued for curtesy consummate in his wife's lands conveyed by her alone in her lifetime. The answer was a general denial, and verdict was for defendants. The court granted a new trial on the ground that the verdict was "unsupported by any evidence," and the defendants appeal. Both plaintiff and defendants tried the case on the theory that if plaintiff and the sole grantor in the deed were husband and wife, that issue was born alive of the marriage, that she was seized of the premises during coverture and died before suit was brought, and that defendants were then in possession, plaintiff was entitled to recover. Plaintiff's instructions were framed on this theory, and defendants filed no demurrer and the only instructions asked by them were given, and these related only to the burden resting upon plaintiff to prove the birth of living issue and the other issues of fact set out in plaintiff's petition. *Held*, that, notwithstanding court and counsel were mistaken as to the law of the case, in that their theory was that the husband, not having joined in his wife's deed, had a curtesy estate in the land, yet, the verdict being for the right party in view of the facts and the law, the order granting a new trial will be reversed, and the cause remanded with directions to set it aside and to reinstate the judgment.

2. **CURTESY:** Deed by Wife Alone. The estate of the husband, both by the curtesy initiate and by the curtesy consummate, is completely wiped out by a conveyance by the wife of her separate real estate during her lifetime, regardless of his failure or refusal to join in her deed.

3. ———: ———: Married Woman's Acts. The Married Woman's Acts of 1889, declaring (in Sec. 7328, R. S. 1919) that all real estate belonging to any woman at her marriage, or which may have come to her during coverture by gift or inheritance, or by purchase with her separate money or means, shall be and remain "her separate property and under her separate control," and by declaring (in Sec. 7323, R. S. 1919) that "a married woman shall be deemed a *femme sole*" so far as to enable her "to contract and be contracted with," gave to a married woman the unrestricted

right to convey her said real estate by her sole deed, without her husband joining therein, and such a conveyance by her alone extinguishes his curtesy in her real estate so conveyed.

Appeal from Scotland Circuit Court.—*Hon. N. M. Pettingill,* Judge.

REVERSED AND REMANDED *(with directions)*.

*J. E. Luther* and *C. C. Fogle* for appellants.

(1) The assignment "that the verdict rendered by the jury is unsupported by any evidence" is too general and indefinite to constitute a ground for a new trial. (2) The verdict is supported by the evidence for the reason that the evidence introduced by both sides conclusively shows that the defendants have ever since the date of the execution of the deed from Sill to the defendants been the owners, and entitled to the possession, of the real property in question. (3) The burden of proof was on the plaintiff to show that at the times alleged in his petition he was the owner, and entitled to the possession, of the said real property. As he did not sustain the burden the verdict was supported by the evidence. (4) As the evidence introduced by both sides shows defendants were the owners, and entitled to the possession, of the said real property ever since the Sill's deed to them, the plaintiff could not show that he was the owner and entitled to the possession thereof. Therefore no verdict in favor of plaintiff could be allowed to stand. (5) The effect of the Married Women's Acts is to abolish the estate by the curtesy, both initiate and consumate, in all property of the wife acquired after their enactment. Hence plaintiff did not, and could not, show that he was the owner, and entitled to the possession of the said real property. (6) Since the enactment of the Married Woman's Acts the separate conveyance by the wife of property thereafter acquired by her destroys the husband's estate by the curtesy, both initiate and consummate, if any, therein. Hence plaintiff did not,

and could not, show that he was the owner, and entitled to the possession, of the said real property.   Bank v. Hageluken, 165 Mo. 443; Kirkpatrick v. Pease, 202 Mo. 471, 490; Riggs v. Price, 227 Mo. 333, 351; Kirkpatrick v. Pease, 202 Mo. 471.

*Hudson V. Smoot* for respondent.

(1) The assignment in the motion for a new trial "that the verdict rendered by the jury is unsupported by any evidence" is sufficient to warrant the court in examining the record to ascertain if there is any evidence which can sustain the verdict.   Securities Co. v. Kansas City, 265 Mo. 264; State v. Scott, 214 Mo. 261.   (2)   The Married Woman's Act of 1889, Sec. 6869, R. S. 1909, now Sec. 8309, does not destroy the curtesy interest or estate of the husband, but merely gives to the wife the entire control and management of her real estate, and enjoyment of the usufruct free from her husband's control.   She can convey it without her husband joining in the deed and pass a fee simple title, subject only to the contingency that her husband might outlive her and claim his curtesy therein.   Moseley v. Bogy, 272 Mo. 328; Teckenbrock v. McLaughlin, 246 Mo. 717; Myers v. Hansbrough, 202 Mo. 500; Brown v. Dressler, 125 Mo. 589; Donovan v. Boyd, 215 Mo. 162; Healey v. Tillberry, 192 Mo. App. 513; Rutledge v. Rutledge, 177 Mo. App. 476.

DAVID E. BLAIR, J.—The action is ejectment for possession of the west half of Lots Seven and Eight in Block Four in the original town, now city, of Memphis, in Scotland County, and for damages and for fixing the value of monthly rents and profits.

The answer contained a general denial, and set up defendant's claim of title to the premises in controversy and alleged a certain agreement between respondent (plaintiff below) and his wife relating to the property, purporting to authorize the conveyance of said property by her free of any claim by the respondent.   The reply denied the new matter of the answer and alleged that the

respondent was entitled to an estate by the curtesy in said property; that respondent was sixty-four years old when the petition was filed and entitled to the use of the property during his life or expectancy, and prayed the court to determine his interest in the property and require appellants to pay a gross sum in lieu thereof, as provided by Section 8499, Revised Statutes 1909.

Trial before a jury resulted in a verdict for appellants (defendants below). The trial court had struck out all testimony in a deposition of the appellants relating to the alleged agreement between respondent and his wife that she could convey her separate property. There was no other evidence on that issue. Upon motion a new trial was granted on the sole ground that the verdict is unsupported by any evidence. The appeal is from the order granting a new trial.

It is admitted that one John M. Nichols is the common source of title. On May 28, 1903, he conveyed the property in question to Alvira Brook, the wife of respondent, and she conveyed to Joseph P. Sill on October 28, 1909, while said Alvira was the wife of respondent. Sill conveyed to appellant Sylvester Barker on April 25, 1912. Appellant Annie E. Barker is the wife of Sylvester Barker. At the time the petition was filed and at the trial appellants were in possession of the property, claiming title. Respondent did not join in his wife's deed to Sill. A child was born alive of the marriage between respondent and his wife. Alvira Brook died May 16, 1917, and this suit was begun on September 15, 1917.

The funds for the purchase of the property in question were derived from the estate of Alvira Brook's deceased father. The evidence tends to show that at the time Alvira Brook purchased the property in May, 1903, she and respondent had ceased to live together as man and wife. The testimony in the deposition which was stricken out by the court tended to show an agreement that respondent and his wife should each own and control their individual property, and that respondent thereafter sold his farm and Alvira joined in the deed, and that when

she conveyed the property in question to Sill in 1909 respondent, in violation of his alleged agreement, refused to join in the deed. This deed appears in full in the record and recites "that Alvira Brook and her husband Thomas Brook, . . . grant, bargain, sell, convey and confirm unto Joseph P. Sill, . . . " and it is signed and acknowledged only by Alvira Brook, without recital as to whether she was married or single.

After Alvira Brook conveyed the property to Sill valuable improvements were made thereon. There is some evidence in the record referring to the pendency of a divorce suit between respondent and his said wife. This undoubtedly was never pressed, because all parties are proceeding on the theory that the marriage relation existed at the death of Mrs. Brook in May, 1917.

I. Appellants contend that the assignment of error in the motion for a new trial, which the trial court stated to be the sole ground for sustaining the same, is not

**New Trial: No Evidence.** sufficient. Such assignment is as follows: "Because the verdict rendered by the jury is unsupported by any evidence." Appellants cite Falloon v. Fenton, 182 Mo. App. 93, l. c. 98, in support of this contention. It was said in State v. Scott, 214 Mo. 261, "It is only in case there is no substantial evidence to support the verdict that this court will interfere." The assignment here is that there was no evidence at all to support the verdict. The assignment itself is sufficient, and if, in fact, there was no evidence to support the verdict, the motion for a new trial was properly sustained. The determination of this question presents the real question for decision.

II. If the deed of Alvira Brook to Joseph P. Sill in which respondent did not join, was effectual to convey the fee simple title to the premises in controversy free from any claim of respondent to a life estate therein by the curtesy, then the court erred in granting a new trial. More broadly stated, the question to be here determined is: Does Section 8309, Revised Statutes 1909 (Sec. 7328,

R. S. 1919), abolish the husband's estate by the curtesy consummate in his wife's separate real estate when she has conveyed same during her lifetime by a deed in which he has not joined?

It would appear upon an examination of the abstract of the record that both appellants and respondent tried the case below on the theory that if respondent was the husband of Alvira Brook and issue of the marriage was born alive and Alvira was seized of the premises during coverture and died before the suit was filed and appellants were then in possession of the premises, respondent was entitled to recover. Respondent's instructions were framed on that theory. Appellants filed no demurrer at the close of all the evidence, and the only instructions asked by appellants were given by the court. These related only to the burden cast upon respondent of proving the birth of living issue, and other issues of fact set out in respondent's instructions, and to the form of verdict if the jury found for appellants.

If the jury, out of sympathy for the unfortunate situation of appellants, disregarded the instructions of the court and found for appellants, yet must that verdict be permitted to stand nevertheless, if, perchance, court and counsel were mistaken as to the law of the case and the verdict after all was for the right party? [In re Lankford Estate, 272 Mo. 1.] Such is the question to be determined.

Under the common law respondent would clearly have been entitled to possession of the premises at the time the petition was filed and at the date of the trial. Marriage, birth of living issue, seizin in the wife during coverture, death of the wife—all the essentials of an estate by the curtesy consummate at common law—are here present. The husband's right could only be cut off by joinder in the deed. He must prevail here unless the provisions of Sections 8304 and 8309, Revised Statutes 1909, are such that the separate deed of his wife was sufficient to cut him off.

Section 8309, Revised Statutes 1909 (Sec. 7328, R. S. 1919), or the part thereof involved here, is as follows:

"All real estate . . . belonging to any woman at her marriage, or which may have come to her during coverture by . . . purchase with her separate money or means . . . shall, together with all income, increase and profits thereof, be and *remain* her separate property and under her sole control."

Section 8304, Revised Statutes 1909, (Sec. 7323, R. S. 1919), is as follows:

"A married woman shall be deemed a *femme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue and be sued at law or in equity, with or without her husband being joined as a party. . . . "

These sections of the statute are generally referred to as the Married Woman's Act and were enacted in 1889.

This is the first time the exact question here involved has been before this court for decision. A great deal of judicial learning has been expended in construing the statute from various angles. The case nearest like this one on the facts is Farmers Exchange Bank v. Hageluken, 165 Mo. 443. This was an action to foreclose a deed of trust executed by Mrs. Hageluken, in which her husband did not join. She made the defense that she was incompetent to convey the land mentioned in the deed of trust. She acquired title to the land in 1891. The trial court entered judgment foreclosing the deed of trust, and the judgment was affirmed by Court in Banc.

SHERWOOD, J., speaking for the court, after reviewing prior construction of the same statute in its effect on the separate personal property of the wife, at page 448, said:

"If, under Section 3296 as it originally stood, the personal property and rights in action became a married woman's separate property and under her sole control; and if as to such property she became a *femme sole* and

could execute alone a valid release for injuries done her, it is difficult to see why larger and more comprehensive rights did not accrue to, and become hers, by reason of the broad provisions of Section 6864, aforesaid. We hold that they did, and that under that section she had full power to contract with, and to deal with, strangers, or indeed with any one else to the full extent of the property rights mentioned in that section, and such contracts when made were followed by such results as attend the contracts of all others. To hold otherwise would be to ignore the plain and broad language of that section, as well as to ignore the evident progress made in our legislation toward the ultimate emancipation of married women from the shackles by which she was fettered at common law, and by the final consummation of that purpose by the enactment of existing statutes. . . .

"The statute was designed to confer on a married woman the *legal estate* in her land in as full and complete manner and degree, as if she were a *femme sole*. This is the view taken in Illinois of a statute which provided that such property 'shall be and remain during coverture, her sole and separate property, under her sole control, and be held, owned, possessed and enjoyed by her the same as thought she were sole and unmarried,' MCALLISTER, J., remarking: 'An estate so derived is no longer the mere creature of equity, dependent upon its power alone for protection, and its principles for the right of enjoyment; but, in all cases, when by the nature of the gift, bequest, devise, conveyance or deed of settlement, an absolute legal title would be vested in a *femme sole,* the same title would, under the statute, be vested in a *femme covert,* and the property be held, owned, possessed and enjoyed by her the same as though she were sole and unmarried. When the estate is thus transformed from an equitable to a legal estate, all of the rights incident to it must be legal rights. So far as the statute goes, her disability and her husband's marital rights are alike swept away.' [Cookson v. Toale, 59 Ill. 515.]

. . .

"Being the possessor of the legal title, a married woman's deed must be as broad in its conveying power as that legal title and her capacity to 'contract and be contracted with,' and would consequently pass that legal title or it would pass nothing. To hold to the opposite of this would be to reject the plain meaning of the statutory words; to dwarf, cripple and pervert that meaning in utter disregard of the whole history of our progressive legislation on the subject under discussion.

"Instances have been cited in Brown v. Dressler, 125 Mo. loc. cit. 595, where an equitable lien has been created by an imperfect conveyance or contract to convey, following the familiar rule in equity. [Adams Eq. (8 Ed.) 121.] But no instance can be found in the books, either of court-writer or text-writer, where such equitable lien was held to be created, where a transaction took place between a man or woman and third parties, unless the grantor in the attempted conveyance was *sui juris, and had the power without assistance, to make a valid conveyance. Such status of sui juris,· and such power to convey, are denied* in the case under comment, and *yet the power to create an equitable lien is asserted.*

"For these reasons we shall decline to follow the ruling in Brown v. Dressler, but on the contrary declare that Isabella received a full complete legal title by reason of the quitclaim deed made to her; and that she conveyed a title of like nature when she executed the deed of trust. And further that her husband was not a necessary party in this litigation."

In Riggs v. Price, 277 Mo. 333, WALKER, J., speaking for Court in Banc and discussing the competency of a husband to testify in a suit brought against his wife involving her separate real estate, where the husband's status as a competent witness depended on his interest in his wife's separate real estate, at page 351, said:

"This reasoning would have been more cogent if he had been made a party to the suit and his right to testify had been based on an interest acquired in his wife's property prior to the enactment of the Married Woman's

Act in 1889, when the husband was, upon the birth of living issue, seized of an estate for life in his own right as a tenant by the curtesy initiate. Since the enactment of this statute, however, the wife as to the control and conveyance of her separate property is *sui juris,* and as such clothed with the right to sell her land and make a deed thereto independent of her husband. The consequent effect of this grant of power is to destroy the tenancy by the curtesy initiate, because it can no longer exist as an estate or interest in the husband in the presence of the wife's complete power of disposal of her property, but is reduced to a mere interest in expectancy.

"This conclusion finds its sufficient support in the language and purpose of the Married Woman's Act itself, which provides as to the matter here at issue, that she shall be deemed a *femme sole,* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her; and that, in law or equity, she may sue or be sued without her husband being joined as a party. [Sec. 8304, R. S. 1909.]

"In construing this statute, we have explicitly held in Farmers' Bk. v. Hageluken, 165 Mo. 446, that it empowers a married woman to convey her real estate without joining her husband in the deed."

The Riggs case is the latest expression of Court in Banc in approval of the ruling made in the case of Bank v. Hageluken, supra. Four of the judges concurred. WOODSON, J., did not sit; FARIS and WILLIAMS, JJ., concurred in the result and in all except the paragraph from which the quotation is taken.

Kirkpatrick v. Pease, 202 Mo. 471, was a suit for specific performance of a contract to sell the separate real estate of the wife. The contract of sale was made by the wife's agent and the sale was subsequently ratified by her in writing. The husband was made a party defendant in the specific performance suit. The substance

of the petition is set out in the opinion, and it appears therefrom that Mrs. Pease's husband in all things concerning the sale of the land and in the ratification thereof co-operated with her. The court found the husband did co-operate. The language used by Judge Lamm at page 490 is as follows:

"A married woman, as our statutes now run, is clothed with the right to sell lands held by her in her own separate right as her own separate property. [Farmers Exchange Bank v. Hageluken, 165 Mo. 443; R. S. 1899, secs. 4335, 4340.] She may make a deed thereto as a *femme sole;* hence, she may give authority to an agent to contract a sale, and it follows that she may ratify the act of her agent."

While the above language possibly was not necessary to the decision in the Kirkpatrick case, it is very illuminating upon the view which that learned judge had of the effect of the decision of the Hageluken case.

Evans v. Morris, 234 Mo. 177, was a suit in equity to establish a resulting trust in certain lands. The trial court refused to admit in evidence a deed signed by two married women conveying their separate property wherein their husbands did not join. Brown, J., speaking for the court, at page 186, said:

"This deed was objected to and excluded on the ground that the said Eliza E. Shifflett and Dora E. Evans were then married women, and incapable of making a deed without their husbands joining them. The trial court committed error in excluding this deed, because these ladies, if they had attained the age of eighteen, were competent to transfer by their deed whatever interest they owned in the land, without their husbands joining them."

In First National Bank v. Kirby, 175 S. W. l. c. 930, Brown, C., referring to Sections 8304 and 8309, Revised Statutes 1909, said:

"It is evident that these statutes, purporting to secure a married woman's property to her own use, with the right to contract with reference to it as if she were

unmarried, and to permit it to be taken in execution for her debts, could be of little use to her should she continue to be tied hand-and-foot with disabilities in handling it. The ability to make contracts necessarily implies the grant of the ability to perform them, by removing the restrictions that had disabled her from handling the property with which she must respond to their obligations; and this court has so construed these statutes."

The learned commissioner then refers approvingly to Bank v. Hageluken, supra. See also Bank v. Kirby, 269 Mo. 285, 190 S. W. 597, on second appeal.

The language used in some of the Missouri cases may be said to throw some doubt on the correctness of the ruling in the Hageluken case, although that case has never been overruled or even criticised. In Moseley v. Bogy, 272 Mo. l. c. 328, WHITE, C., said:

"The Married Woman's Act of 1889 applied to this property because the marriage took place in 1890. The husband's common-law curtesy was a mere life estate, contingent on his outliving her. The wife had entire control and management of her real estate, and enjoyment of the usufruct free from her husband's control. She could convey it without his joining in the deed and pass a fee simple title, subject only to the contingency that he might outlive her and claim his curtesy in it."

In the Moseley case the wife died seized of the property and the surviving husband was claiming curtesy in such property which the wife had undertaken to devise by will to her children.

In State v. Keller, 174 S. W. 67, which was a murder case wherein defendant had been refused an instruction telling the jury the defendant had the right to convey her separate property without the consent of her husband and without his joining in the deed, FARIS, J., held that the refusal was not error on other grounds, and in passing expressed his doubt of the correctness of the rule attempted to be laid down in the refused instruction.

In Teckenbrock v. McLaughlin, 246 Mo. 711, BLAIR, C., expressly refrained from stating any opinion as to

the right of the wife to defeat her husband's curtesy in her separate real estate by her deed of conveyance independent of his joinder therein. In that case the wife had lost her suit to contest her mother's will, and a second suit had been brought by her, in which her husband joined. It was held that the Married Woman's Act had wiped out the husband's present interest in his wife's property, and that the husband could not maintain such will contest.

In Brown v. Dressler, 125 Mo. 589, BRACE, J., held that the Married Woman's Act did not give the wife the power to dispose of her separate real estate without her husband had joined in the deed, as required by Section 2396, Revised Statutes 1889, but recognized her power to bind her separate property by a lien for the purchase price. Section 2396, Revised Statutes 1889, was carried forward from the 1879 Revised Statutes.

In the Hageluken case the court declined to follow the case of Brown v. Dressler, supra, thereby in effect holding that the provisions of Section 2396, Revised Statutes 1889, did not limit the power of the wife to convey her separate property, in view of the enactment of the Married Woman's Act.

Section 2396, Revised Statutes 1889, was carried forward as Section 901, Revised Statutes 1899. In 1905 the General Assembly repealed Section 901, Revised Statutes 1899, and enacted a new section in lieu thereof. The first sentences of the repealed Section 901 and the new Section 901 are identical, and read as follows:

"A husband and wife may convey the real estate of the wife and the wife may relinquish her dower in the real estate of her husband, by their joint deed acknowledged and certified as herein provided."

The enactment of 1905 was carried forward as Section 2788, Revised Statutes 1909, and Section 2175, Revised Statutes 1919. The decision in the Hageluken case declining to follow and practically overruling the case of Brown v. Dressler, which was based on Section 2396, Revised Statutes 1889, was handed down December 3, 1901. It is fair to assume that the Legislature in 1905, in

re-enacting that portion of the statute, adopted the construction in effect put upon said section by the Supreme Court in 1901 in the Hageluken case, by declining to follow Brown v. Dressler, supra.

In Myers v. Hansbrough, 202 Mo. 495, the facts were that after the death of the wife seized of the property in question, the public administrator, under order of the probate court, took possession of the property of the wife to collect the rents therefrom to pay the debts of her estate. The deceased wife had not encumbered the property to secure the debts. Division One of this court, in an opinion by VALLIANT, P. J., held that the surviving husband had an estate in said property by the curtesy consummate, which could not be postponed or defeated by the creditors of the deceased wife. The facts are entirely different from those in the Hageluken case, and the two cases are thereby clearly distinguished.

WALKER, J., in Riggs v. Price, supra, distinguished that case from Myers v. Hansbrough on the ground that in the latter case the husband had an estate by the curtesy consummate, while in the Riggs case he had only an estate by the curtesy initiate. Continuing the discussion of the Myers case, and incidentally the case of Teckenbrock v. McLaughlin, supra, Judge WALKER, at page 353, said:

"The sole question upon which the language of the court could have any ruling force was one of preference between the creditors of the wife who had no lien, and the husband, as the owner of the estate by the curtesy consummate. This was independent of any consideration of the interest of the husband during the life of the wife. The expression, therefore, in that case, that curtesy initiate constitutes a vested interest cannot reasonably be construed as more than a passing remark, and being responsive to no issue is determinative of nothing. Otherwise construed, the effect of the Myers case is to declare that a husband can have a vested interest by the curtesy initiate in his wife's real estate, contemporaneously with her power under the statute of 1889, to convey same and

Brock v. Barker.

invest the grantee with an absolute fee therein.   Such a construction limits the letter and destroys the purpose of the Married Woman's Act.   It is repugnant to reason, and despite the remark made in Teckenbrock v. McLaughlin, 246 Mo. 1. c. 717, that 'there are two lines of authority in this State on this question,' the rulings here and elsewhere will be found in accord with that in the Hageluken case.   The Teckenbrock case did not attempt, nor was it necessary for it•to define the nature of a husband's interest as a tenant by the curtesy initiate in his wife's property since the enactment of the Married Woman's Act.   All that it did decide was that when suit was brought *by a husband and wife* to set aside a will, it could not be maintained on the ground of the husband's interest as tenant by the curtesy initiate in the property of his wife acquired by descent since the statute of 1889.   That nothing therein gave any authority to the maintenance of an action of this character under Section 555, Revised Statutes 1909, defining who may contest the validity of wills; and for the additional reason that the issue was *res adjudicata,* in having been determined in a former proceeding identical in its character."

In the case of Donovan v. Griffith, 215 Mo. 149, the facts were that the wife died seized of the equitable title to land bought with her separate means.   The husband had taken the legal title in himself.   The issues involved were whether the husband had an estate by the curtesy in such land, the effect of the death of the child before seizin in the wife, and whether partition of the land could be had.   Conveyance by the wife was not in the case. Fox, P. J., at page 162, said:

"In Myers v. Hansbrough, 202 Mo. 495, it was expressly ruled that the Married Woman's Statute, Section 4340, Revised Statutes 1899, which is the same as Section 6869, Revised Statutes 1889, did not further impair the rights of the husband's estate by the curtesy in land held by the wife as her separate equitable estate than to take away from the husband his common-law right to the possession and usufruct of the land during the life of the wife.

"Applying the doctrine as announced in the cases above indicated, it is clear that the law is well settled in this State that a husband is entitled to curtesy in the equitable separate estate of the wife, and the provisions of Section 4340, which is denominated the Married Woman's Statute, has in no way changed the rights of the husband other than to the extent as heretofore indicated."

This case cannot be regarded as out of harmony with the ruling in the Hageluken case, because the wife died seized of the property.

It appears from the above cases that there is a strong trend of opinion of this court toward the view that the Married Woman's Act has completely emancipated married women in respect to their separate property and that they now have full power under the Married Woman's Act to dispose of their separate real estate without joinder of the husband in the deed of conveyance. This is the ruling in the Hageluken case clearly and unqualifiedly. Some subsequent decisions have thrown some doubt about the rule laid down in that case without in any wise overruling or even seriously criticising it.

It is difficult to understand how full force and effect can be given Sections 8304 and 8309, Revised Statutes 1909 (Secs 7323 and 7328, R. S. 1919), without holding that, where the wife during her lifetime has conveyed her separate real estate, the estate of the husband, both by the curtesy initiate and by the curtesy consummate, in such property is thereby completely wiped out, regardless of his failure or refusal to join in her deed of conveyance. Only by so holding can her separate real estate be truly said to "be and remain her separate property and under her sole control." If, when dealing on her own account, she cannot contract debts which may be satisfied during her lifetime out of her separate real estate to the exclusion of her husband's present or prospective interest therein, then she cannot be truly said to be able to carry on and transact business on her own account as a *femme sole*. To declare that her husband has an indefeasible interest in her separate real estate, unless

he has joined her in conveying same, is to put restrictions on her use of her separate property and to cripple her activities as a *femme sole.*

The argument that such construction gives the wife more rights in her husband's separate property than he has in hers is one that might be very persuasive if made to the Legislature. It has no place and can avail nothing as a legal argument before a court.

The rights of the husband by the curtesy consummate in the separate lands of wife of which she died seized are not involved here. In determining those rights in a proper case, full effect will necessarily be given to the provisions of Section 536, Revised Statutes 1909 (Sec. 506, R. S. 1919).

We hold as under the facts in this case that where the wife during her lifetime has conveyed her separate real estate without joining the husband in the deed of conveyance, the husband, after her death, cannot assert any interest in such real estate by virtue of being the surviving husband.

It follows that respondent had no right of possession or any interest in the premises in controversy at the time that the suit was filed or thereafter, and that the verdict of the jury was for the right party. The order of the trial court granting a new trial is reversed and the cause remanded with directions to set aside the order granting a new trial and to reinstate the judgment on the verdict of the jury.

All concur.