EVA L. O'BRIEN V. SEDALIA TRUST COMPANY ET AL., Appellants.—5 S. W. (2d) 74.

Division One, April 11, 1928.

1002

*W. D. Steele* and *A. L. Shortridge* for appellants.

*Bohling & Bohling* and *Paul Barnett* for respondent.

ELLISON, C.—Suit to construe the will of Sarilda Hicks who died in 1923. The issues presented on the appeal have been so narrowed that it is unnecessary to set out at length either the pleadings or the will itself. The testatrix provided: (1) for the payment of her just debts, funeral expenses, etc.; (2) she devised one-half of her remaining or net estate to her husband, Jacob W. Hicks, for life, with remainder over to her sister Maud E. Bandy for life; (3) the other one-half she devised to her said sister, Maud E. Bandy, for life, with remainder over to her said husband, Jacob W. Hicks, for life; (4) on the death of both Jacob W. Hicks and Maud E. Bandy the estate property was to be converted into cash, invested, and the income paid in specified parts, for the upkeep of a cemetery, to the Y. M. C. A. of Sedalia, and to the trustees of the First Christian Church of Sedalia. The validity of these trust legacies was determined by the decree below, and no complaint is made here respecting that branch of the case. We shall not refer to it again. To state the points at issue we must go a step further.

The estate involved consists solely of eighty-five acres of land in Pettis County, Missouri, which was the separate property of the testatrix. Both life tenants are dead, Maud E. Bandy dying first. There was no children born of the marriage of Jacob W. Hicks and Sarilda Hicks, and she left no lineal descendants. Jacob W. Hicks did not make and file an election to take one-half of his wife's real and personal estate subject to the payment of debts. Neither did he elect in writing to renounce the will under Sections 328 and 329, Revised Statutes 1919.

The defendant executor, the Sedalia Trust Company, which is also executor of the will of Jacob W. Hicks, has appealed, along with some of the other defendants. Their first assignment is that the trial court erred in refusing to decree that Jacob W. Hicks as widower

of the testatrix took a one-half interest in her estate subject to debts, in spite of the will, under Section 320, Revised Statutes 1919, enacted for the benefit of widowers when the wife dies childless. The appellants contend he was entitled to that interest, absolutely, without making or filing an election or renunciation of the will, and that the widow could not cut down or diminish the share so granted him by the law. Appellants' other assignment—there are only two—is that the devise of the other half of the real estate to Maud E. Bandy for life, remainder over to Jacob W. Hicks for life, created an estate tail, which, under the Section 2267, Revised Statutes 1919, vested the remainder in fee in Jacob W. Hicks as second taker. So it will be seen by the two assignments the appellants claim the entire title was in the widower after Maud Bandy died and when he died.

As to the first assignment, the respondent admits Jacob W. Hicks took a one-half interest in the land under the statute mentioned, Section 320, if it was in force in 1923 when the testatrix died; but respondent maintains it was not. She points to the Act of 1921 abolishing tenancy by the curtesy, in which it is provided that a widower shall have the same share in the real estate of his deceased wife that she would have in his, with the same rights of election and the same limitations thereto. From this it is argued that Section 320 was repealed by necessary implication; that both widowers and widows now share in the real estate of their deceased consorts under the same statutes; and that if Jacob W. Hicks was entitled to a half-interest in the testatrix's land it must have been under Section 321, Revised Statutes 1919, declaratory of widows' rights, and then only pursuant to election and renunciation of the will as is required of the widow in such cases. Since he died without doing this it is contended he was bound by the testamentary provision made for him and that the same must be treated as superseding and in lieu of his election dower in the land (Sec. 328, R. S. 1919). As indicated, this view was taken by the trial court. We proceed to a discussion of the issue.

I. Laws 1921, page 119, on which respondent relies is as follows:
"The estate which a widower may have in the real estate of his deceased wife known as 'tenancy by the curtesy,' is hereby abolished, and in lieu thereof the widower shall have the same share in the real estate of his deceased wife that is provided by law for the widow in the real estate of her deceased husband, with the same rights of election and the same limitations thereto: provided that nothing contained in this act shall be so construed as to defeat any estate by the curtesy which shall have vested prior to the date of taking effect of this act."

The act was passed without an emergency clause and was approved March 29, 1921. The first question confronted is whether this stat-

ute applies only when the widow dies intestate. The inquiry is not suggested by anything in the enactment itself, but arises out of the fact that earlier at the same session on March 10, 1921, the General Assembly passed another act—also without an emergency clause—repealing and reenacting Section 506, Revised Statutes 1919, in which it was provided that any married or unmarried woman not less than twenty-one years old may make a will devising her real estate ''subject to the rights of the husband, if any, to his curtesy therein.'' [Laws 1921, p. 117.] Are these two acts to be read together and construed as meaning the widower of a testate wife shall have curtesy whereas the widower of an intestate wife shall not? We think not. The will statute was Senate Bill No. 96, and its obvious, sole purpose was to increase the minimum age for testamentary capacity of women from eighteen to twenty-one. That was the only change made by the reenactment. It recognized but did not legislate concerning curtesy. Nineteen days later House Bill No. 178 abolishing curtesy was approved. The right of curtesy existed when the will statute was passed; it was simply done away with by the later legislation at the same session.

If the other view be taken and the will statute be regarded as prospective legislation enforcing and continuing the curtesy right in the circumstances stated the two statutes are in irreconcilable conflict. Clearly, there is no reasonable ground for putting the widowers of testate wives in a separate class and saying they alone shall have curtesy; and it would be violence to the provisions of the curtesy statute, which are unequivocally to the contrary, to read such an exception into it. This being so the latter act, abolishing curtesy, must be held to have repealed that part of the earlier on the same subject by necessary implication, though both were passed at the same session and by virtue of Article 4, Section 36, of the Constitution took effect at the same time. [State v. Bressie, 304 Mo. 71, 74, 262 S. W. 1015; State ex rel. State Tax Commission v. Crawford, 303 Mo. 652, 661, 262 S. W. 341.]

But the point really urged on this first assignment is this. It will be noted the quoted statute says tenancy by the curtesy is abolished and *in lieu thereof* the widower shall have the same share in his deceased wife's real estate that the law would give her in his; and at the conclusion of the section is a proviso declaring the act shall not be construed to defeat curtesy estates theretofore vested. Appellants insist this language implies the act is to be effective only by way of exchange or substitution in instances when the widower would have curtesy but for the statute; and hence it is contended the section is not applicable in the absence of seizin during coverture and birth of living issue, these being prerequisites to curtesy. [Brook v. Barker, 287 Mo. 13, 18, 228 S. W. 805; 8 R. C. L. p. 387.] On the

other hand respondent maintains the intent of the legislation is to abolish curtesy as an *institution* rather than in the particular case, and to supplant it with another scheme putting *all* widowers on an equality with widows respecting devolving real estate, as near as may be. Subject to limitations which we shall presently indicate, we hold the latter view is correct.

There is nothing in the middle or granting part of the section, so far as we can see, calculated to restrict the operative effect of the law to a particular class of widowers, viz., those who could have curtesy. On the contrary the word widower is used throughout in a generic sense. Furthermore, it is provided that the share given the widower shall carry the same *rights* of election (in the plural) as pertain to the widow's interest, and one of these we know (under Secs. 321 and 323, R. S. 1919) arises only *when there are no children in being*. This plainly extends the operation of the law to widowers who could not have curtesy, for frequently there are no children living because none have been born. A like conclusion has been reached by this court on two analogous questions. It was held in Perry v. Strawbridge, 209 Mo. 621, 630, 108 S. W. 641, that a husband could take a half-interest in his deceased wife's estate under Section 320 though he had no right to curtesy; and in Klocke v. Klocke, 276 Mo. 572, 581, 208 S. W. 825, it was ruled that a widow's right to election dower under Section 321 is not dependent on her having common-law dower—overruling Von Arb v. Thomas, 163 Mo. 33, 63 S. W. 94.

Another consideration which tends to support the construction of the act contended for by respondent is that it runs with the current of legislative thought on the subject. From such cursory investigation as has been possible it appears that tenancy by the curtesy has never been known to the law or else has been abolished in three-fourths of the states, and that in most of those in which the right still exists it amounts, during the life of the wife, to little more than a prospective, contingent life estate subject to destruction by her will, in some, or by her deed, in some, or either. The trend is toward giving both spouses the same rights of succession. [See 8 R. C. L. 407, sec. 20; 17 C. J. 414, sec. 2; Riggs v. Price, 277 Mo. 333.]

This brings us to the thought suggested two or three paragraphs back—that the act abolishing curtesy is subject to certain limitations as regards the granting of equal rights to widows and widowers. The effect of the new statute is sweeping. It would be unwise and *obiter* to attempt to anticipate the numerous questions that may arise, but it is necessary to observe that what has been here said is not to be taken as meaning the Married Women's statutes, Sections 7323 and 7328, Revised Statutes 1919, are repealed or encroached upon. While a widower now has the same dower right in his wife's land that a

widow would have in her husband's, it does not follow that he must join in conveyances of her separate real estate, as she must do in his, to pass the whole title. In this respect there is inequality, a discrimination against the husband; but that was true while the husband still had curtesy, and has been commented upon by this court. [Brook v. Barker, supra, 287 Mo. 1. c. 29.] Such considerations, as that case says, are for the Legislature, not the courts.

Since the act abolishing curtesy and granting the widower dower is of general application it follows that Section 320, Revised Statutes 1919, has been repealed by implication and that the failure of Jacob W. Hicks to renounce his wife's will under Sections 328 and 329, Revised Statutes 1919, and to make and file his election to take a half interest in the testatrix's real estate under Sec. 323 and Laws 1921, page 111 (Sec. 325, R. S. 1919) left him bound by the provisions of the will as the recipient only of a life estate in the land.

If the matter were dependent alone on the failure to elect under Section 325 there might be some doubt about the conclusion reached. Prior to 1919 (See Laws 1917, pp. 100 and 107) Section 325 prescribed how a widow's election should be exercised, and added: "otherwise she shall be endowed under the provisions of Sections 345, 347 and 348 (R. S. 1909)." The three sections referred to gave the wife common-law dower. This was definite: But by Laws 1919, pages 98, 104, the statute was reenacted and the alternative just quoted stricken out, the following being inserted in lieu thereof: "otherwise she shall be endowed under *the provisions of the preceding sections of this article*" (italics ours); and so it now stands. The change makes it wellnigh unintelligible. The election dower sections as well as the common-law dower sections precede Section 325 in the article, and the statement on the face of the statute is that although the widow fail to make her election she yet may take under the preceding sections some of which contemplate an election. But twice since this court has given the statute the meaning previously attached to it: McLain v. Mercantile Trust Co., 292 Mo. 114, 122, 237 S. W. 506; Landis v. Hawkins, 290 Mo. 163, 168, 234 S. W. 827; and Section 323 expressly requires an election between Section 315 (the common-law dower section) and Section 321 (the one applicable here) so, on the whole, an election must still be considered necessary when required heretofore.

II. The remaining assignment made by appellants, that the will created an estate tail as to the half interest devised to Maud E. Bandy for life, is so completely erroneous that we shall discuss the matter only briefly. The will does not create an estate tail. There is no effort to devise an estate of inheritance excluding the general heirs of Maud E. Bandy and confined to her lineage. [Inlow v. Herren, 306 Mo. 42, 65, 267 S. W. 893; 21 C. J. 931, sec.

43; 10 R. C. L. 656, sec. 13.] The mere fact that the will created a life estate with remainder over did not make an estate tail (Bodine v. Arthur, 91 Ky. 53, 14 S. W. 904, 34 A. S. R. 162); and the legality of the devise was not affected by the fact that there were successive life estates preceding the remainder, since and so long as it did not violate the rule against perpetuities. [21 C. J. 990, sec. 143; Hudspeth v. Grumke (Mo. Div. 1), 214 S. W. 865, 868; Landers Inv. Co. v. Brown, 300 Mo. 348, 359, 254 S. W. 14.]

Accordingly the decree is affirmed. *Lindsay* and *Seddon, CC.,* concur.

PER CURIAM:—The foregoing opinion by ELLISON, C., is adopted as the opinion of the court. All of the judges concur.